E. PLAINTIFF, v. F. DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided March 8, 1972.

*Mr. Lawrence P. Urban* for plaintiff (*Messrs. Schusted and Urban,* attorneys).

*Mr. George Warren* guardian *ad litem,* for defendant.

LOWENGRUB, J. D. C. (temporarily assigned). An amended complaint was filed in this matter on September 29, 1971 alleging as the ground for divorce from the bond of matrimony defendant's institutionalization in the Camden County Psychiatric Hospital for Mental Illness (hereinafter called Lakeland), for 24 consecutive months after the date of the marriage and next preceding the filing of that complaint.

The parties were married on September 21, 1963.

On May 24, 1968 defendant was committed to Lakeland on a temporary commitment, and on June 14, 1968 he was transferred to a regular commitment. Defendant's medical diagnosis on admission was paranoid schizophrenia.

Defendant was, as of the date of the trial in this matter, March 1, 1972, an active patient at Lakeland under a program of rehabilitation.

Between June 20 and September 29, 1971 he was permitted to leave the hospital on 15 separate weekend visits with his mother. The weekend visitations continue to date. There have not been other visitation periods permitted him.

Plaintiff testified that she has not seen defendant since his commitment and, further, that there was no cohabitation between her and defendant since his admission to Lakeland.

Defendant does not deny that he has suffered from mental illness since at least his commitment on May 24, 1968, but he argues that he was not institutionalized for a period of at least 24 consecutive months next preceding the filing of the complaint because he was permitted to leave the hospital on weekends for a period of about three months before the filing date of the amended complaint.

Defendant also argues that the real meaning of the statute is that plaintiff must prove that he was mentally in-

competent for the statutory period. He alleges that plaintiff has failed in that burden since no evidence was introduced by her of a determination that he was a mental incompetent.

The hospital records show that defendant was, from the date of his temporary commitment to the trial date, a patient committed to the hospital without benefit of discharge. He was given permission to leave the hospital after application for weekend visits had been made by his mother and approved by the hospital staff member in charge of his case.

Defendant could not leave Lakeland without permission, and although he was away for the weekend, he was subject to the rules and regulations of the hospital.

Since there is no New Jersey case authority to shed light on the meaning of that portion of *N. J. S. A.* 2A:34-2(f) requiring institutionalization for "24 or more consecutive months," it would be well to look to the comment to the proposed statute in the final report to the Governor and the Legislature published by the Divorce Law Study Commission, dated May 11, 1970:

The premise is that dead marriages should be terminated at the option of either party. It follows that fault is immaterial. A divorce should not be granted as a reward for virtue or imposed as a punishment for marital sin. The public interest is concerned with the stability of functioning and meaningful marriages. From the standpoint of the non-institutionalized spouse, he or she needs and is entitled to a partner in the household and a surrogate parent for children, if any. It is the absence of the other party from the home, for whatever cause, that constitutes a deprivation.

Moreover, if the family relationship has so far deteriorated that the plaintiff seeks a divorce, there is no social good to be achieved by withholding that remedy. If the marriage remains viable the non-institutionalized spouse will not petition for divorce.

It is apparent, then, that the gravamen of the cause of action is the inability of the institutionalized spouse to be a working partner in the marriage. A patient who is confined in a mental hospital, and who will not be discharged unless approval is given by the medical staff, is not the spouse in a

viable marriage whether he have weekend visitation privileges outside of the hospital or not. In any event, the weekend privileges are not as a matter of right, but are only granted if they are deemed warranted by medical authority.

█ The continuity of the status of his commitment as a patient in Lakeland was not interrupted by weekend leaves from the hospital. They were and at best are part of a program of rehabilitation with a view to discharge at a subsequent time when the condition of the patient permits.

As to defendant's argument that plaintiff must prove that he was mentally incompetent during the 24-month period, we must first look to the language of the statute for its interpretation. That language is clear and unambiguous. The statute must therefore speak for itself and be construed according to its own terms. *Bass v. Allen Home Improvement Co.,* 8 *N. J.* 219 (1951); *Rosenthal v. State Employees', etc., System of N. J.,* 30 *N. J. Super.* 136 (App. Div. 1954).

Courts are to interpret the statute as an expression of the legislative will as it is written, and not according to some supposed or unexpressed intention. A court must not presume that the Legislature intended anything more in a statute than that which it actually wrote as to the law. *Dacunzo v. Edgye,* 19 *N. J.* 443 (1955); *Hoffman v. Hock,* 8 *N. J.* 397 (1952).

█ A person who is declared to be mentally incompetent is one who by age, disease or affliction has become incapable of managing his own affairs. *Warker v. Warker,* 106 *N. J. Eq.* 499 (Ch. 1930); *Perrine's Case,* 41 *N. J. Eq.* 409 (Ch. 1886).

Illness has been defined as poor health or sickness; loss of health; affliction or disability; an unhealthy condition of the body or mind. *Roget's Thesaurus* (1969 ed.) 386; *Webster's New Collegiate Dictionary* (7th ed. 1967) 415.

In another statute our Legislature has defined mental illness as a mental disease of such an extent that a person so

afflicted requires care and treatment for his own welfare, or the welfare of others or the community. See *N. J. S. A.* 30:7B–2(f).

Paranoid schizophrenia clearly comes within the definition of mental illness since mental illness encompasses a general malady of the mind, whereas a mental incompetent is a person who has been declared to be incapable of managing his own affairs. A person may be mentally ill but capable of managing his own affairs. The two conditions are not synonymous.

Plaintiff has established by uncontroverted evidence that defendant was a patient in the Camden County Psychiatric Hospital for a period of at least 24 consecutive months subsequent to the marriage and that the time period next preceded the filing of the complaint. His confinement was a result of his mental illness. A judgment of divorce from bed and board will be granted.

The issue of visitation by defendant of the child of the marriage will be determined at a subsequent hearing.