BERNICE MCKAY, PLAINTIFF, v. ESTATE OF LOUIS MCKAY, DECEASED, DEFENDANT.

Superior Court of New Jersey
Law Division Camden County

Decided November 9, 1984.

*George L. Seltzer* for plaintiff (*Alten, Valentine, Seltzer and Schultz,* attorneys).

*Morrey Lacktman* for defendant (*Lashman, Miksis and Stillwell,* attorneys).

LARIO, J.T.C., (t/a).

Bernice McKay, the surviving spouse of decedent, Louis McKay, has commenced this action seeking a statutory elective one-third share of the estate against his will as permitted by *N.J.S.A.* 3A:38A–1(a) [1], which provided as follows:

> If a married person dies domiciled in this State on or after the effective date of this act, the surviving spouse has a right of election to take an elective share of one-third of the augmented estate under the limitations and conditions hereinafter stated, provided that at the time of death the decedent and the surviving spouse had not been living separate and apart in different habitations or had not ceased to cohabit as man and wife, either as the result of judgment of divorce from bed and board or under circumstances which would have given rise to a cause of action for divorce or nullity of marriage to a decedent prior to his death under the laws of this State.

Defendant denies that plaintiff has a right of election to take an elective share: first on the ground that plaintiff's claim was time-barred; and, second, that plaintiff had not met the conditions of the statute, which allegedly requires as a pre-condition the decedent and the surviving spouse to have not been living separate and apart in different habitations at the time of death.

Plaintiff denies that she is out of time. She also denies that she and decedent were living separate and apart; and, in the event the court should find that they were living separate and apart, she argues in the alternative that separation alone is not sufficient to bar her statutory right of election.

From the stipulations entered into, the pleadings and evidence presented, I find the material facts to be as follows:

Plaintiff and defendant were married on December 28, 1975. No issue was born of this marriage. Mr. McKay died March 10, 1981 at 72 years of age, leaving a will whereby he bequeathed 20% of his estate to plaintiff and the remainder to Louis McKay, III, his son by a previous marriage. Mr. McKay had several prior marriages. Immediately prior to his marriage

---

[1] *N.J.S.A.* 3A:38A–1(a) effective at the time of decedent's death has been repealed by *N.J.S.A.* 3B:29–1 and replaced by *N.J.S.A.* 3B:8–1, which is substantially identical, effective May 1, 1982.

to plaintiff, he was married to Eleanore Fagan, a well-known professional singer who performed under the name, Billie Holiday. No children were born of this marriage and Billie Holiday predeceased Mr. McKay, leaving to him her entire estate. Mr. McKay's estate consists almost entirely of royalty interests received from various musical compositions written or recorded by Billie Holiday and from her published biography. It was estimated that these royalty interests have averaged upwards of $15,000 to $20,000 annually.

Mr. McKay's will was offered for probate in Atlantic County, where, by judgment of the Atlantic County Surrogate dated April 7, 1981, his attorney, L. Mifflen Hayes, was qualified as executor. More than six months thereafter plaintiff sought to elect against the will pursuant to *N.J.S.A.* 3A:38A–1(a), *supra.* Judge Steedle, sitting in the Superior Court, Law Division, Probate Part, Atlantic County ruled that the attempted election was time-barred by reason of the six month limitation fixed by *N.J.S.A.* 3A:38A–5(a) [2]. *McKay v. McKay's Estate,* 184 *N.J.Super.* 217 (Law.Div.1982), aff'd o.b. *188 N.J.Super.* 44 (App.Div. 1983).

While plaintiff's appeal was pending to the Appellate Division, a separate action was instituted by her in the Superior Court, Law Division, Probate Part, Atlantic County, which sought a judgment revoking the letters of probate previously issued on the grounds that the Surrogate of Atlantic County lacked jurisdiction, claiming the decedent was not domiciled in Atlantic County at the time of his death, but instead was domiciled in Camden County. This action was tried in Atlantic County before Judge Perskie, who found as follows:

1. Decedent moved to Atlantic County from the marital apartment, located in Camden, Camden County in May 1980.

---

[2]Now *N.J.S.A.* 3B:8–12.

2. In August 1980 decedent moved substantially all of his clothing and personal belongings from the Camden marital apartment to his residence in Atlantic County.

3. During most of the time between May 1980 and his death, decedent was physically present in the Atlantic County area. During this time the decedent kept in contact with plaintiff and periodically saw her at the Northgate apartment in Camden.

4. Decedent intended to remain in Atlantic County permanently and to reside there with his son, Louis McKay, III.

5. Although decedent was physically present in Atlantic County and intended to remain there permanently, he was not domiciled there as he had not picked out a particular abode where he intended to remain on a permanent basis.

As a result of these findings Judge Perskie entered an order dated August 16, 1983 vacating the judgment of the Atlantic County Surrogate admitting to probate the will of Louis McKay on the "sole ground that decedent was not domiciled in Atlantic County at the time of his death and that the Atlantic County Surrogate was without jurisdiction to probate the will."

Thereafter, upon application made to the Surrogate of Camden County a judgment was entered on November 10, 1983 admitting the will to probate and appointing attorney Hayes as personal representative. On February 14, 1984 the present action was instituted pursuant to *N.J.S.A.* 3B:8–12, and after notice to interested parties a hearing was held as required by *N.J.S.A.* 3B:8–13.

Plaintiff and defendant presented testimony detailing decedent's various residences during the last years of his life and also relating to their marital relationship. Plaintiff attempted to establish that she and decedent were not totally separated and that he periodically returned to their marital abode at Northgate in Camden, New Jersey, where they occasionally engaged in marital relations.

Defendant presented contradictory evidence that the parties were in fact separated for approximately ten months; that decedent resided at various addresses in Atlantic County, excepting a short period in Mays Landing; and, that his periodic contact with plaintiff at the Northgate apartment was solely to pick up clothing and other personal papers and belongings, which were extensive.

Based on the facts presented, defendant moves for judgment dismissing the complaint on the two defensive grounds initially pleaded. As to its first defense, defendant claims that since Judge Steedle entered judgment in the prior Atlantic County proceeding whereby he refused to grant plaintiff leave to file an application for an elective share on the basis that it was not filed by October 7, 1981, that plaintiff was now barred from reasserting her claim at this time. In support thereof, defendant contends that Judge Perskie's subsequent order did not declare the granting of Letters Testamentary null and void, but rather vacated those letters as of the date the order was signed, to wit: August 16, 1983. It urges that it would be incongruous to permit plaintiff to do now that which the Superior Court and the Appellate Division held was time-barred by plaintiff's failure to proceed prior to October 7, 1981.

■ Contrary to defendant's interpretation of the effect of Judge Perskie's order of August 16, 1983, I conclude that since he determined that the Surrogate of Atlantic County lacked jurisdiction, the result necessarily is that the granting of Letters Testamentary were null and void, *ab initio*, and not as of August 16, 1983, the date the order was signed.

As stated by Judge Conford in *State v. Bigley Bros., Inc.* 53 *N.J.Super.* 264, 268 (App.Div.1958), "There can be no dispute that lack of jurisdiction of a court over subject matter is fatal to any judgment ... *State on Complaint of Bruneel v. Bruneel,* 14 *N.J.* 53, 58 (1953)...." [at 268].

■ "When a judgment is vacated or set aside ... it is entirely destroyed and the rights of the parties are left as

though no such judgment had been entered ... the vacation of a judgment vacates all proceedings taken under the judgment." 49 *C.J.S.*, Judgments § 306, at 557–58.

*N.J.S.A.* 3B:8–12 [3] permits a surviving spouse to elect by filing a complaint in the Superior Court in the county in which the personal representative was appointed within six months after the appointment. Since the Atlantic County judgment appointing a personal representative was void, the sole lawful appointment of a personal representative for the estate of Louis McKay is that which was entered when Mr. Hayes was duly qualified by the Surrogate of Camden County on November 10, 1983. Therefore, plaintiff had until May 10, 1984 to file this complaint. Having filed her complaint in the Superior Court, Camden County on February 14, 1984, plaintiff has complied with the time limitation prescribed.

Defendant's second defense against the plaintiff's election is that Judge Perskie made factual findings in the prior action and that under the doctrine of collateral estoppel, all issues controverted which were determined in the first action between the parties are conclusive in these proceedings. Defendant contends that since Judge Perskie found that plaintiff and decedent were living separate and apart, plaintiff is barred from claiming that she and defendant were cohabitating as man and wife at the time of his death, therefore, it is claimed, as a matter of law, plaintiff does not have a right to elect.

Defendant's demand for the application of the doctrine of collateral estoppel is moot. Since both parties presented, without objection, evidence relative to the residences and marital relations of Mr. & Mrs. McKay, I have weighed same and I have reached independent findings of fact based solely upon the evidence presented in this matter, which are not contrary to the findings made by Judge Perskie.

---

[3] *N.J.S.A.* 3A:38A–5 was repealed by *N.J.S.A.* 3B:29–1 and re-enacted as *N.J. S.A.* 3B:8–12 effective May 1, 1982.

From the evidence submitted, I make the following determinations:

In April 1980, Mr. & Mrs. McKay were residing at Northgate apartments, Camden, New Jersey, at which time there existed between them severe marital strife. In May 1980, as a result of this disharmony, Louis McKay, upon the advice of his attorney, moved from their marital apartment and took up residence in Atlantic County. Mr. McKay's leaving was with the intention of separating from his wife and abandoning his domicile in Camden County. During these ten months he resided in various places in Cape May and Atlantic counties, mainly in Atlantic County. Mr. McKay intended to reside together with his son in Atlantic County permanently. During this ten-month period, Mr. McKay did not resume any marital relations with his wife, but the periodic visits to his Camden apartment were solely to retrieve personal property, mainly correspondence and clothing. During the ten-month period of separation defendant sought legal advice concerning a divorce and he told a number of persons that he was either divorced or in the process of securing a divorce from plaintiff, however, no proceedings were ever instituted. At the time of decedent's death, March 10, 1981, he was living at 900 Illinois Avenue, Atlantic City, Atlantic County, New Jersey, separate and apart from his wife who was residing at Northgate Apartments in Camden, Camden County, New Jersey.

By reason of the above factual findings, the sole issue remaining to be decided is whether plaintiff is barred from a right of election, as a matter of law as contended by defendant, solely by reason of the fact that at the time of his death plaintiff and Mr. McKay were living separate and apart in different habitations.

Defendant claims that by use of the word "or" in *N.J.S.A.* 3A:38A–1(a), the Legislature excepted the right of a spouse to elect where, at that time of death, any of the following facts existed:

1. The parties resided separate and apart in different habitations; OR,

2. Although the parties were not living separate and apart in different habitations they had ceased to cohabit as man and wife, either as a result of (a) a judgment of divorce from bed and board; or, (b) under circumstances which would have given rise to a cause of action for divorce or nullity of marriage to the decedent prior to his death under the laws of this State.

It is plaintiff's contention that in order to deprive a spouse of his or her statutory right of election, separation alone is not sufficient, but additionally, it must be established that at the time of death, the separation was "under circumstances which would have given rise to a cause of action for divorce...."

In order to resolve this issue, it is necessary to ascertain the apparent legislative purpose when *N.J.S.A.* 3A:38A-1 was originally enacted. As our Supreme Court recently observed: "In interpreting a statute we continue to adhere to the view that our task is to ascertain the legislative intent." *Fedders Financial Corp. v. Taxation Div. Director*, 96 *N.J.* 376, 385–386 (1984).

Prior to the enactment of this statute, which became effective in 1980, a testator had the right to dispose of his property free of any restrictions except as limited by rights of dower or curtesy to real estate. *N.J.S.A.* 3A:35-1, 2. *Arnault v. Arnault*, 52 *N.J.Eq.* 801, 805 (Prerog.Ct.1894). There was no right for a surviving spouse to claim any personal property against a will. As time passed and social and economic conditions changed whereby most wealth is now in the form of personal property as opposed to real property, the life interests of dower and curtesy were determined to be unsatisfactory as was noted by Dean Robert A. Diab in the following Law Review article:

> Two factors militated against the preservation of dower and curtesy in their original forms. First, they often proved to be serious encumbrances on land, since they could not be lost without the consent of the spouse. Second, they failed to take account of an important incident of the change from an agri-

cultural to an industrial economy, namely that the main form of productive wealth was not longer land but rather personal property, principally in the form of securities and shares in industrial enterprises. Thus, the need to protect the spouse from being disinherited as to such property was recognized by a majority of states which enacted statutes permitting the surviving spouse to elect to take a statutory share (typically one-third of the estate) instead of the provision left her in the will. Most states that afford the spouse this elective of "forced" share have abolished dower and curtesy. [Diab, "New Jersey and the Uniform Probate Code", 2 *Seton Hall L.Rev.* 323 (1971).]

When the Legislature modernized New Jersey's Probate Code, *N.J.S.A.* 3A:38A–1, *et seq.*, enacted in 1979, effective in 1980, it adopted many of the provisions of the Uniform Probate Code (UPC). The elective share provision as contained therein is derived from § 2–201 of the UPC, which grants to a surviving spouse the right of election to take an elective share of one-third, subject only to an express waiver of the right by the surviving spouse or failure by the spouse to seek an elective share within the time provided. UPC § 2–205. From the Senate Judiciary Committee statement attached to the bill, it is obvious that the Legislature, although accepting the purpose of this change, was unwilling to provide for such a broad right of election and instead limited it by adding the conditions hereinbefore set forth in *N.J.S.A.* 3A:38A–1(a), *supra*. As explained in the statement:

This bill, if adopted, will introduce a new concept into New Jersey law. It provides for an "elective share" to a decedent's surviving spouse so that a surviving spouse is entitled to a portion of the assets of the decedent's augmented estate where necessary for the survivor's support and maintenance.

Under existing New Jersey law, a decedent may deplete his entire estate during lifetime by gift or otherwise, so that at the time of death his assets or estate have been either completely or considerably depreciated. The effect is to disinherit the surviving spouse to the extent of such depreciation and can result in complete disinheritance. The object of this bill is to prohibit disinheritance of a surviving spouse who needs continuous support.

The right of the surviving spouse to an elective share is governed by law of the decedent's domicile at the time of his death. If the decedent dies domiciled in this State, the surviving spouse will not be entitled to take an elective share if the parties have been living separate and apart in different habitations, or as the result of the committee amendment, if they had ceased to cohabit as man and wife as the result of a judgment of divorce from bed and board or under circumstances which would have given rise to a cause of action for divorce or nullity of marriage to the decedent prior to his death. This is similar to a

provision in the Pennsylvania law which provides for a forfeiture of the right of election where the parties have been living separate and apart as therein provided.

The comment in the last above-quoted paragraph of the statement, "or as a result of the committee amendment," being placed immediately after "if the parties have been living separate and apart in different habitations," seems to indicate that all that portion of the act which precedes this comment was written in the original bill and that "amendment" refers solely to the clauses that follow. Based thereon, defendant claims that as originally contemplated, a surviving spouse would have lost the right to elect only if the couple were separated at the time of death and that by the committee amendment, there were added additional forfeitures to apply even though the couple were living in the same habitation but not cohabiting as man and wife as a result of the surviving spouse's marital wrong. Therefore, it is defendant's contention that "under circumstances which would have given rise to a cause of action for divorce ..." modifies only the clause "if they had ceased to cohabit as man and wife...."

A strict reading of the Committee statement seems to indicate that there was such a prior bill; however, extensive research of the legislative records has failed to disclose that a bill so worded was ever introduced. The bill's first printing discloses that its composition is identical to the finally adopted version, with the exception that the words "living separate and apart in different habitations" were originally followed by the word "and". This was later amended whereby "and" was changed to "or". Changing the word "and" obviously was a grammatical correction; otherwise, if retained, for a loss of the elective right to occur, it would have required that the parties be living separate and apart in different habitations *in all cases*. This was not the legislative intent. Nevertheless, change of this single word was not the amendment referred to

in the Committee statement, which compared the amendment to the provision in Pennsylvania's statute.

As additionally stated in the Committee statement: "This is one of a series of bills adapted from the Uniform Probate Code which has been approved by the National Conference of Commissioners on Uniform State Laws and the American Bar Association, and has been drafted by the Division of Law Revision of the Legislative Services Agency." It is apparent therefrom that the Division of Law Revision initially submitted to the Legislature a draft which recommended without change the adoption of § 2–201 of the UPC, and logically the amendment referred to by the Committee statement is the Legislature's amendment to the recommended draft. This conclusion is confirmed by the Committee's comment in the statement that the amendment is similar to a provision in the Pennsylvania law. The Pennsylvania statute provides for the loss of the elective right if the spouse attempting to elect shall have willfully neglected to support or deserted the deceased spouse for a period of one year or upwards. If the interpretation as urged by the defendant were accepted, a person could at any time disinherit his or her spouse by unilaterally separating; therefore, it would not make New Jersey's statute similar to Pennsylvania Law. This result would be contrary to the purpose of the act, which was stated to be: "To prohibit disinheritance of a surviving spouse who needs continuous support." Basic statutory construction requires that the language thereof should be construed to effectuate its purpose. *State v. Maguire,* 84 *N.J.* 508, 514 (1980).

The Legislature's unwillingness to provide an elective share right as broad as that provided by the UPC was noted by the Appellate Division in *In the Matter of the Estate of Herbert Hersh, Deceased,* 195 *N.J.Super.* 74 (App.Div.1984), which held that separation for 30 years gave rise to the existence of no fault ground for divorce thereby barring a surviving spouse's

right to a statutory elective share in decedent's estate. In discussing the statute under review, the court stated:

> In adopting this provision however, the Legislature excepted that class of surviving spouse who, though still lawfully married to the decedent on the date of death, bore a relationship which was sufficiently removed from the normally thought of state of matrimony as to make such an election inappropriate. This relationship might be described as a quasi-divorced state—a separation either by judicial decree or accompanied by circumstances which would have enabled the decedent to obtain a divorce. The Legislature sought to define this latter group by the use of the phrase "under circumstances which would have given rise to a cause of action for divorce or nullity of marriage to a decedent prior to his death under the laws of this State." [*Id.* at 77].

From a study of the legislative history surrounding the adoption of this statute, I conclude that although the Legislature was unwilling to grant a surviving spouse an unconditional right of election as provided in the UPC, neither did it desire to permit one spouse to cut off a surviving spouse's right to elect by merely separating. Therefore, the Legislature intended that the clause "under circumstances which would have given rise to a cause of action for divorce ..." also modifies the clause "at the time of death the decedent and the surviving spouse had not been living separate and apart in different habitations."

In the present case, defendant has failed to establish that at the time of Mr. McKay's death there existed facts which would have given rise to a cause of action for divorce to him. The parties had not been living separate and apart for 18 months; therefore, the "no-fault" ground for divorce, *N.J.S.A.* 2A:34-2(d), *Hersh Estate, supra,* does not exist; there was no proof that plaintiff either actually or constructively deserted Mr. McKay; nor was there any other evidence submitted which would have given rise to a cause of action for divorce or nullity of marriage to decedent prior to his death.

It is concluded that plaintiff is entitled to an elective share of one-third of the augmented estate of Louis McKay and the executor is directed to calculate same and proceed in accordance with the provisions of *N.J.S.A.* 3B:8-1, *et seq.*