NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1086-14T4

APPROVED FOR PUBLICATION

January 26, 2017

APPELLATE DIVISION

IN THE MATTER OF THE ESTATE
OF ARTHUR E. BROWN, DECEASED.

_____

Argued September 28, 2016 — Decided January 26, 2017

Before Judges Fuentes, Simonelli and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Probate Part, Burlington County, Docket No. 2014-0895.

Stephanie L. DeLuca argued the cause for appellant Estate of Arthur E. Brown (Lenox Law Firm, attorneys; Ms. DeLuca, of counsel and on the briefs).

Jennifer L. Cavin, Deputy Attorney General, argued the cause for respondent New Jersey Department of Human Services (Christopher S. Porrino, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Ms. Cavin, on the brief).

The opinion of the court was delivered by

SIMONELLI, J.A.D.

This appeal involves a priority lien that the Division of Medical Assistance and Health Services (DMAHS) filed against the Estate of Arthur E. Brown (Estate) pursuant to N.J.S.A. 30:4D-7.2 for reimbursement of $166,981.25 in Medicaid benefits Arthur

E. Brown (Arthur)[1] received from July 1, 2008, to the date of his death on April 14, 2013. DMAHS determined that the lien attached to all assets in the Estate, including Arthur's one-third elective share against the augmented estate of his wife, Mary V. Brown (Mary) that included the proceeds from the sale of the couple's former marital home.

Thomas M. Brown (Thomas) filed a complaint as next-of-kin, seeking a judgment discharging the lien pursuant to N.J.S.A. 30:4D-7.8. Thomas alleged that because the elective share statute, N.J.S.A. 3B:8-1, did not apply to Arthur, the lien claim should be satisfied from the sole assets remaining in the Estate, approximately $5000. In the alternative, Thomas alleged that Arthur's elective share was zero when calculated pursuant to the elective share statutes.

Thomas appeals from the July 29, 2014 Chancery Division final judgment, which denied entry of judgment discharging the lien, and from the September 26, 2014 order, which denied his motion for reconsideration. Thomas also appeals from the May 22, 2015 order, which established the amount of Arthur's one-third elective share of Mary's augmented estate. We affirm the judgment and orders.

---

[1] We use first names to identify the parties for ease of reference. We mean no disrespect in so doing.

We begin our analysis with a review of the federal and state Medicaid statutes and regulations and factual background relevant to this appeal. Medicaid is a federally-created, state-implemented program that provides "medical assistance to the poor at the expense of the public." Estate of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 217 (App. Div. 2004) (quoting Mistrick v. Div. of Med. Assistance & Health Servs., 154 N.J. 158, 165 (1998)), certif. denied, 182 N.J. 425 (2005); see also 42 U.S.C.A. § 1396-1. Although a state is not required to participate, once it has been accepted into the Medicaid program it must comply with the federal Medicaid statutes and regulations. See Harris v. McRae, 448 U.S. 297, 301, 100 S. Ct. 2671, 2680, 65 L. Ed. 2d 784, 794 (1980); United Hosps. Med. Ctr. v. State, 349 N.J. Super. 1, 4 (App. Div. 2002); see also 42 U.S.C.A. § 1396a(a)-(b). The state must adopt "reasonable standards . . . for determining eligibility for . . . medical assistance [that are] consistent with the objectives of the Medicaid program[,]" Mistrick, supra, 154 N.J. at 166 (quoting L.M. v. Div. of Med. Assistance & Health Servs., 140 N.J. 480, 484 (1995)), and "provide for taking into account only such income and resources as are . . . available to the applicant." N.M. v. Div. of Med. Assistance &

Health Servs., 405 N.J. Super. 353, 359 (App. Div.), certif. denied, 199 N.J. 517 (2009); see also 42 U.S.C.A. § 1396a(a)(17)(A)-(B).

New Jersey participates in the federal Medicaid program pursuant to the New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -19.5. Eligibility for Medicaid in New Jersey is governed by regulations adopted in accordance with the authority granted by N.J.S.A. 30:4D-7 to the Commissioner of the Department of Human Services (DHS). DMAHS is the agency within the DHS that administers the Medicaid program. N.J.S.A. 30:4D-5, -7; N.J.A.C. 10:49-1.1. Accordingly, DMAHS is responsible for protecting the interests of the New Jersey Medicaid Program and its beneficiaries. N.J.A.C. 10:49-11.1(b). The local county welfare agency (CWA) evaluates eligibility. N.J.S.A. 30:4D-7a; N.J.A.C. 10:71-1.5, -2.2(c). Through that agency, DMAHS serves as a "gatekeeper to prevent individuals from using Medicaid to avoid payment of their fair share for long-term care." W.T. v. Div. of Med. Assistance & Health Servs., 391 N.J. Super. 25, 37 (App. Div. 2007).

DMAHS provides institutional level Medicaid benefits to individuals residing in nursing homes pursuant to the Medicaid Only program, N.J.A.C. 10:71-1.1 to -9.5. Among other

eligibility requirements, an applicant seeking such benefits must have financial eligibility as determined by the regulations and procedures.  See N.J.A.C. 10:71-1.2(a).  In order to be financially eligible, the applicant must meet both income and resource standards.  N.J.A.C. 10:71-3.15.  Generally, an individual's countable available resources cannot exceed $2000. N.J.A.C. 10:71-4.5(c), -4.8(a).  The resource eligibility requirements for the Medically Needy Program, of which Arthur was a beneficiary, are the same as those for the Medicaid Only program, except the resource limit is $4000 for an individual. N.J.A.C. 10:70—5.1, -5.3(a).

In the eligibility determination, the CWA considers

> all income and resources of the individual . . . and resources which the individual . . . is entitled to but does not receive because of action or inaction by the individual or . . . by any person, including a court or administrative body with the legal authority to act in place of or on behalf of the individual[.]
>
> [N.J.A.C. 10:71-4.10(b)(3) (emphasis added).]

A "resource" is defined as

> any real or personal property which is owned by the applicant (or by those persons whose resources are deemed available to him or her as described in N.J.A.C. 10:71-4.6) and which could be converted to cash to be used for his or her support and maintenance. Both liquid and non-liquid resources shall be considered in the determination of

eligibility unless . . . [they] are specifically excluded under . . . N.J.A.C. 10:71-4.4(b).

[N.J.A.C. 10:71-4.1(b) (emphasis added).]

See also N.J.A.C. 10:71-4.2. A resource is considered "available" to an individual when "[t]he person has the right, authority or power to liquidate real or personal property or his or her share of it[,]" or when "resources have been deemed available to the applicant" pursuant to N.J.A.C. 10:71-4.6. N.J.A.C. 10:71-4.1(c)(1)-(2).

In addition to requiring participating states to adopt regulations for determining eligibility, federal Medicaid law requires states "to enact certain 'estate' recovery provisions as part of their medical assistance plans." Estate of DeMartino, supra, 373 N.J. Super. at 217 (citing 42 U.S.C.A. §§ 1396a(a)(18), 1396c, 1396p(b)(1)). Specifically, "[i]n the case of an individual who was [fifty-five] years of age or older" when he or she received medical assistance, states are required, in pertinent part, to "seek adjustment or recovery from the individual's estate, but only for medical assistance consisting of . . . nursing facility services, home and community-based services, and related hospital and prescription drug services[.]" 42 U.S.C.A. § 1396p(b)(1)(B). "States may recover Medicaid benefits after the death of the recipient's surviving

spouse provided that the Medicaid recipient leaves 'no surviving child who is under age 21, or . . . is blind or permanently and totally disabled.'" Estate of DeMartino, supra, 373 N.J. Super. at 217 (quoting 42 U.S.C.A. § 1396p(b)(2)(A)).

Further, to satisfy the federal estate recovery requirements, states must define a decedent's estate to include at least "all real and personal property and other assets included within the individual's estate, as defined for purposes of State probate law[.]" 42 U.S.C.A. § 1396p(b)(4)(A). However, federal estate recovery requirements permit participating states to adopt broader definitions of "estate" that may include:

> any other real and personal property and other assets <u>in which the individual had any legal title or interest at the time of death</u> (to the extent of such interest), including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement.
>
> [42 U.S.C.A. § 1396p(b)(4)(B) (emphasis added).]

New Jersey has enacted statutes to comply with the federal estate recovery requirements. N.J.S.A. 30:4D-7.2(a)(2) permits the Commissioner of DHS to file a lien "against and recovery sought from the estate of the deceased recipient for assistance correctly paid or to be paid on his behalf for all services

received when he was [fifty-five] years of age or older[.]" Consistent with federal law, New Jersey has enacted a statute that defines "estate" as including

> all real and personal property and other assets included in the recipient's estate as defined in [N.J.S.A.] 3B:1-1, as well as any other real and personal property and other assets in which the recipient had any legal title or interest at the time of death, to the extent of that interest, including assets conveyed to a survivor, heir or assign of the recipient through joint tenancy, tenancy in common, survivorship, life estate, living trust or other arrangement.
>
> [N.J.S.A. 30:4D-7.2(a)(3) (emphasis added).]

N.J.S.A. 30:4D-7(j) requires the Commissioner "[t]o take all necessary action to recover the cost of benefits correctly provided to a recipient from the estate of said recipient[.]" Accordingly, the Commissioner has adopted regulations to comply with the federal estate recovery requirements. N.J.A.C. 10:49-14.1(d) authorizes DMAHS to "file any claim or lien against an estate . . . within three years after receiving actual written notice from the personal representative of the estate or any other interested party of the death of the Medicaid beneficiary." Similar to N.J.S.A. 30:4D-7.2(a)(3), N.J.A.C. 10:49-14.1(l) defines "estate" as follows, in pertinent part:

> (l) For purposes of this section, the term "estate" with respect to a deceased Medicaid beneficiary shall include:

1. All real and personal property and other assets included within the individual's estate, as defined in N.J.S.A. 3B:1-1; and

2. For individuals who died on or after April 1, 1995, the term "estate" shall also include any other real and personal property and other assets in which the Medicaid beneficiary had any legal title or interest at the time of death, to the extent of that interest, including assets conveyed to a survivor, heir or assign of the beneficiary through joint tenancy, tenancy in common, survivorship, life estate, living trust or other arrangement, as well as any proceeds from the sale of any such property which remain in the estate of the survivor, heir or assign of the beneficiary, to the extent of the beneficiary's interest[.]

[(Emphasis added).]

Our role "is to interpret a federal statute in light of the purposes that Congress sought to achieve through its enactment." Estate of DeMartino, supra, 373 N.J. Super. at 219. Thus, we must "look not only at the particular statutory language but also to the design of the statute as a whole." Ibid. We should interpret the statute "in accordance with its ordinary meaning and in a common sense manner so as to accomplish the purpose and intent of Congress." Ibid. Congress requires that participating states adopt estate recovery provisions and authorized states to adopt a more expansive definition of "estate" "to address the increased demand for Medicaid benefits

from the nation's aging population." Ibid. "Allowing states to recover from the estates of persons who previously received assistance furthers the broad purpose of providing for the medical care of the needy; the greater amount recovered by the state allows the state to have more funds to provide future services." Ibid. (quoting Belshe v. Hope, 38 Cal. Rptr. 2d 917, 925 (Cal. Ct. App. 1995)).

In this case, Arthur and Mary lived together in their jointly-owned condominium before he began living in an assisted living facility in April 2007, when he was seventy-eight years old. On July 18, 2007, Mary executed a Last Will and Testament, naming Thomas and his two siblings as her residual beneficiaries. Mary excluded Arthur as a beneficiary under her Will.

On February 6, 2008, Arthur and Mary executed a deed transferring Arthur's interest in the condominium to Mary. On April 7, 2008, Arthur was admitted into a nursing home, suffering from Alzheimer's disease, and soon thereafter applied for institutional level Medicaid benefits under the Medically Needy Program. The CWA conducted a resource assessment of Arthur and Mary as a married couple and determined that they had $141,732.24 in total countable resources, and Mary had $70,866.12 in protected community spouse assets. The

condominium and an automobile were deemed exempt resources for purposes of establishing Arthur's Medicaid eligibility.[2] After spending down his share of the couple's resources, Arthur became eligible for Medicaid benefits, effective July 1, 2008. In accordance with Medicaid regulations, Arthur submitted applications for Medicaid benefits every six months until his death on April 14, 2013.

Mary became ill in November 2009, and died testate on September 9, 2010.[3] The assets in her estate included the proceeds from the sale of the condominium, bank accounts, and stock that was transferred to her after Arthur submitted his first Medicaid application.

In November 2010, Thomas notified the CWA of Mary's death and the discovery of two life insurance policies with a combined

_____

[2] According to DMAHS, shortly before an institutionalized spouse applies for Medicaid, married couples often transfer the marital home to the spouse who will remain in the community. See gen. N.J.A.C. 10:71-4.8(a)(3). Arthur transferred his interest in the condominium to Mary as a Medicaid planning technique to maximize resources for her. Because Arthur and Mary held themselves out to DMAHS as a married couple, Mary was permitted to retain the condominium and automobile, as well as $70,566.12 in other resources, as her community spousal resource allowance consistent with N.J.A.C. 10:71-4.8(a)(3). DMAHS emphasizes, however, that the couple's transfer of the condominium was for Medicaid eligibility purposes only and did not mean the condominium was not part of Mary's augmented estate.

[3] On September 22, 2010, the Mercer County Surrogate issued letters testamentary to Thomas.

cash surrender value of approximately $1250, which were unknown to Mary at the time of Arthur's first Medicaid application. In December 2010, the CWA inquired as to whether Arthur would elect a spousal share against Mary's estate. Thomas responded that the elective share statute did not apply to Arthur.[4] Consequently, on January 12, 2011, the CWA notified Arthur and Thomas that Arthur's Medicaid benefits would terminate, effective June 30, 2011. The CWA also notified them that Arthur had twenty days to request a fair hearing, his Medicaid benefits may continue until a final decision was rendered, and Arthur may be required to repay any Medicaid benefits to which he was not entitled.[5]

The CWA claimed that Arthur's waiving of the spousal elective share amounted to a transfer of an available asset that subjected him to a penalty period of ineligibility. The CWA relied on N.J.A.C. 10:71-4.10, which provides as follows, in pertinent part:

> (a) An individual shall be ineligible for institutional level services through the Medicaid program if he or she (or his or her

---

[4] Thomas presumably responded on Arthur's behalf pursuant to a power of attorney.

[5] The CWA continued Arthur's Medicaid benefits during the administrative proceedings until he died. DMAHS posits that this had no bearing on whether or not he was ultimately entitled to those benefits.

spouse) has disposed of assets at less than fair market value at any time during or after the [sixty]-month period immediately before[.]

. . . .

(b) The following definitions shall apply to the transfer of assets:

. . . .

3. Assets shall include all income and resources of the individual and of the individual's spouse. <u>Assets shall also include income and resources which the individual or the individual's spouse is entitled to but does not receive because of action or inaction by the individual</u> or the individual's spouse; or by any person, including a court or administrative body with the legal authority to act in place of or on behalf of the individual or the individual's spouse; or any person, including a court or administrative body, acting at the direction of or upon the request of the individual or the individual's spouse. <u>Examples of actions that would cause income or resources not to be received shall include, but shall not be limited to</u>:

. . . .

ii. <u>Waiving the right to receive an inheritance, including spousal elective share pursuant to N.J.S.A. 3B:8-10</u>[.]

[<u>N.J.A.C.</u> 10:71-4.10(a), (b)(3)(ii) (emphasis added).]

Thomas maintained there was no waiver because Arthur had no right to an elective share. On Arthur's behalf, Thomas requested an administrative hearing to contest the applicability

of N.J.A.C. 10:71-4.10(b)(3)(ii).  The matter was transferred to the Office of Administrative Law (OAL) for a hearing, where arguments relating to the applicability of the elective share statutes, N.J.S.A. 3B:8-1, -3, and -5, were also raised.  Arthur moved for summary decision, which the Administrative Law Judge (ALJ) denied.  The ALJ found that Arthur was not excepted from N.J.S.A. 3B:8-1, the condominium was not excluded from Mary's augmented estate under N.J.S.A. 3B:8-5, and Arthur was subject to a transfer of assets penalty because he was entitled to, but did not claim, an elective share of Mary's estate.

The Assistant Commissioner of DHS denied Arthur's request for interlocutory review, and Arthur did not pursue an interlocutory appeal to this court.  The OAL scheduled the matter for a final hearing, but Arthur died before then.  The Estate did not pursue the matter, and the request for a hearing was withdrawn a year later.

Arthur had received a total of $166,981.25 in Medicaid benefits from July 1, 2008, until his death on April 14, 2013.  On July 28, 2013, DMAHS filed a priority lien claim against the Estate pursuant to N.J.S.A. 30:4D-7.2 for reimbursement.  On November 6, 2013, DMAHS filed an amended lien claim to clarify that the lien attached to all assets in the Estate, including

Arthur's elective share against Mary's estate that included the proceeds from the sale of the condominium.

Thomas, as next-of-kin, filed a complaint in the Chancery Division, Probate Part, for judgment discharging the lien. He contended that Arthur had no right to an elective share of Mary's estate under N.J.S.A. 3B:8-1, which entitles a surviving spouse to

> a right of election to take an elective share of one-third of the augmented estate under the limitations and conditions hereinafter stated, provided that at the time of death the decedent and the surviving spouse . . . had not been living separate and apart in different habitations or had not ceased to cohabit as man and wife, either as the result of judgment of divorce from bed and board or under circumstances which would have given rise to a cause of action for divorce or nullity of marriage to a decedent prior to his death under the laws of this State.
>
> [N.J.S.A. 3B:8-1.]

Thomas argued that the statute did not apply because the right to an elective share was personal to Arthur and could only be exercised during Arthur's lifetime as per N.J.S.A. 3B:8-11, which provides, in pertinent part, that "[t]he right of election to take an elective share by a surviving spouse . . . may be exercised only during his lifetime."

Thomas also argued the statute did not apply because Arthur and Mary had been living separate and apart at the time of

Mary's death, or ceased to cohabit as man and wife under circumstances that gave Mary a cause of action for divorce under N.J.S.A. 2A:34-2(f), "[i]nstitutionalization for mental illness for a period of [twenty-four] or more consecutive months subsequent to marriage and next preceding the filing of the complaint[.]" Thomas posited that N.J.S.A. 2A:34-2(f) applied because Arthur was institutionalized in a nursing home for Alzheimer's disease.

In the alternative, Thomas contended that Arthur's elective share was zero because the proceeds from the sale of the condominium were excluded from Mary's augmented estate under N.J.S.A. 3B:8-5, which provides, in pertinent part, that "[a]ny transfer of property shall be excluded from the augmented estate under [N.J.S.A.] 3B:8-3, if made with the written consent or joinder of the surviving spouse[.]" Thomas argued that this statute applied because Arthur willfully and in writing through the deed transferred his interest in the condominium to Mary.

Thomas also contended that Arthur's elective share was zero because the value of all property he owned in his own right at the time of Mary's death is deducted from his elective share pursuant to N.J.S.A. 3B:8-18, which provides as follows, in pertinent part:

16                                          A-1086-14T4

> The amount of the surviving spouse's . . . elective share shall be satisfied by applying:
>
> a. The value of all property, estate or interest therein, owned by the surviving spouse . . . in his own right at the time of the decedent's death from whatever source acquired, or succeeded to by the surviving spouse . . . as a result of decedent's death notwithstanding that the property, estate or interest or part thereof, succeeded to by the surviving spouse . . . as the result of decedent's death has been renounced by the surviving spouse[.]

In a July 29, 2014 oral opinion, the trial judge reviewed the legislative history of N.J.S.A. 3B:8-1 and determined that Arthur did not fall within the excepted class of surviving spouses who cannot elect against the deceased spouse's estate under the statute. The judge rejected Thomas's argument that Arthur had no right to an elective share because he and Mary had been living separate and apart at the time of her death. The judge found that the couple was not divorced, never filed for divorce, and never intended to file for divorce; rather, because of Arthur's Alzheimer's disease, the couple decided that Arthur would first reside in an assisted living facility and thereafter a nursing home. Citing In re Estate of Hersh, 195 N.J. Super. 74, 77 (App. Div.), certif. denied, 99 N.J. 185 (1984), the judge determined that mere physical separation because one spouse was residing in a nursing home was not by itself enough

to prevent that spouse from claiming an elective share. The judge emphasized there was nothing in the legislative history of N.J.S.A. 3B:8-1 that intended such a result.

The judge also rejected Thomas's argument that Arthur had no right to an elective share because he and Mary ceased to cohabit as man and wife, thus giving Mary a cause of action for divorce under N.J.S.A. 2A:34-2(f). The judge considered a physician's affidavit stating that Arthur was not competent to handle his affairs as of July 2008, but found Arthur was not institutionalized in a psychiatric facility and there was no guardianship application or judgment of incapacity and no evidence of his level of capacity prior to Mary's death.

The judge declined to hold that every couple would qualify for divorce when one spouse suffers from Alzheimer's disease, because depriving that spouse of the spousal share "would leave vulnerable adults with an inability to access assets that might be necessary for their care. This was not the intent of the [L]egislature." Citing I.G. v. Dep't of Human Servs., 386 N.J. Super. 282, 291 (App. Div. 2006), the judge also determined that "where there are limited assets . . . without access to the elective share, the practical effect is for . . . the cost of care to be shifted upon the taxpayers. . . . There is no indication this was the intent of the [L]egislature either."

The judge emphasized there was no evidence of marital discord; rather, through Medicaid planning, Arthur and Mary had worked together to protect each other by securing assets for their future use. The judge concluded that the elective share was available to Arthur even though he was residing in a nursing home.

The judge also found that despite Arthur having never exercised the elective share during his lifetime, it was available to him and his ability to exercise that right while alive was not excepted from N.J.S.A. 3B:8-1. The judge concluded that DMAHS's broad estate recovery powers entitled it to seek reimbursement of the Medicaid benefits an individual received even where he or she did not pursue the elective share while alive.

Lastly, the judge found that the transfer of Arthur's interest in the condominium to Mary was not a transfer within the ambit of N.J.S.A. 3B:8-3, as that statute applies to transfers by the decedent, not the surviving spouse. Accordingly, the judge held that the proceeds from the sale of the condominium were included in Mary's augmented estate and there was no basis to discharge the priority lien against the Estate, as Arthur's elective share of Mary's augmented estate

was part of the Estate. The judge memorialized her decision in a final judgment entered on July 29, 2014.

Thomas filed a motion for reconsideration, arguing that the judge: (1) failed to calculate Arthur's elective share under N.J.S.A. 3B:8-15; (2) incorrectly found that DMAHS had advised Arthur that the elective share statute applied in determining his Medicaid eligibility; and (3) overlooked the effect of N.J.S.A. 2A:34-2(f) on limiting Arthur's right to an elective share under N.J.S.A. 3B:8-1. In a September 26, 2014 order and written opinion, the judge denied the motion, finding that Thomas had not requested a calculation of Arthur's elective share and presented nothing new to warrant reconsideration.

Thomas appealed. Following a Civil Appeals Settlement Program conference, we remanded the matter for the limited purpose of calculating Arthur's elective share. On remand, Thomas calculated Mary's estate at $17,507.41, comprised of $15,988.12 from two bank accounts and $1,519.29 from miscellaneous other property. He excluded the proceeds from the sale of the condominium, the value of the stocks that were transferred to Mary, and the value of her joint bank account with Arthur.

In the alternative, Thomas calculated Mary's estate at $244,347.55, which included the previously excluded assets and

other property. Thomas then deducted $70,430.32 for expenses incurred by Mary's estate, and calculated her net augmented estate at $173,917.23. Thomas then averred that Arthur's elective share of Mary's augmented estate was $25,870.85, at the most, and that the following assets Arthur owned at the time of Mary's death must be deducted from that amount pursuant to N.J.S.A. 3B:8-18(a):

| | | |
|---|---|---|
| 1. | Checking Account | $3,563.21 |
| 2. | Personal Needs Account | 221.12 |
| 3. | New Jersey Group Life Ins. Policy | 6,726.87 |
| 4. | Pre-paid Funeral Trust | 9,626.01 |
| 5. | Pre-paid Mausoleum | 5,610.00[6] |
| 6. | New Jersey Death Benefit | 2,073.07 |
| 7. | Prudential Ins. Policy | 4,281.28 |
| | Total | $32,101.56 |

Thomas concluded that Arthur's elective share was zero after deducting these assets.

In a May 22, 2015 written opinion, the judge calculated Mary's augmented estate at $184,861.58, comprised of $261,848.40 in total estate assets minus $76,986.82 in estate expenses. The judge noted she had previously ruled that the proceeds from the sale of the condominium were included in Mary's augmented estate, and found that Thomas had excluded assets that were

---

[6] The judge re-calculated the pre-paid mausoleum at $5175.

included under N.J.S.A. 3B:8-3(a), -6, and -7, including the transferred stocks, an IRA, and two insurance policies.

The judge then calculated Arthur's elective share at $48,379.92, comprised of one-third of Mary's augmented estate ($61,620.53) minus the assets Arthur owned at the time of Mary's death, which the judge calculated at $13,240.61. The judge declined to deduct the New Jersey Group Life Insurance Policy, pre-paid funeral trust, and New Jersey Death Benefit from Arthur's elective share, finding that N.J.S.A. 3B:8-18(a) only permitted the deduction of assets owned by Arthur at the time of Mary's death. The judge reasoned that Arthur did not own or control these assets at the time of Mary's death, and had no control over and was unable to derive any benefit from them during his lifetime. The judge memorialized her decision in an order entered on May 22, 2015.

Thomas appeals from the July 29, 2014 final judgment, and from the orders entered on September 26, 2014, and May 22, 2015. On appeal, he reiterates the arguments made to the trial judge.

Because this appeal involves the judge's interpretation of the Medicaid and elective share statutes, our review is de novo. Potomac Ins. Co. of Ill. ex rel. OneBeacon Ins. Co. v. Pa. Mfrs.' Ass'n Ins. Co., 215 N.J. 409, 421 (2013). However, the trial court's factual findings "are binding on appeal when

supported by adequate, substantial, credible evidence." Ibid.

(quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)).

As for the denial of a motion for reconsideration, we have

held that

> [r]econsideration itself is a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice[.] It is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion, but should be utilized only for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (citations omitted).]

We will not disturb a trial court's reconsideration decision

absent a clear abuse of discretion. Pitney Bowes Bank, Inc. v.

ABC Caging Fulfillment, 440 N.J. Super. 378, 383 (App. Div.

2015) (citation omitted). An abuse of discretion "arises when a

decision is made without a rational explanation, inexplicably

departed from established policies, or rested on an

impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J.

561, 571 (2002) (citation omitted). Applying the above

standards, we discern no reason to disturb any of the judge's

rulings.

Thomas argues that the Estate had no right to an elective share of Mary's augmented estate under N.J.S.A. 3B:8-1 because: (1) Arthur and Mary had been living separate and apart at the time of her death; and (2) the couple ceased to cohabit as man and wife under circumstances that gave Mary a cause of action for divorce under N.J.S.A. 2A:34-2(d) (separation for at least eighteen months), or N.J.S.A. 2A:34-2(f) (institutionalization for mental illness for a period of twenty-four or more consecutive months).  These arguments lack merit.

A surviving spouse is entitled to an elective share of one-third of the deceased spouse's augmented estate provided that at the time of the decedent's death the couple "had not been living separate and apart in different habitations or had not ceased to cohabit as man and wife, either as the result of judgment of divorce from bed and board or under circumstances which would have given rise to a cause of action for divorce[.]"  N.J.S.A. 3B:8-1.  The object of the statute was to prohibit disinheritance of a surviving spouse who needs continuous support.  McKay v. Estate of McKay, 205 N.J. Super. 609, 618 (Law Div. 1984).  The effect of the statute "was to drastically alter the preexisting law and provide a surviving spouse with an

option to take one-third of the estate if he or she were not adequately provided for by the decedent." Estate of Hersh, supra, 195 N.J. Super. at 77.

N.J.S.A. 3B:8-1 prevents a spouse, if divorced, from claiming the right to share in the decedent's estate, and also prevents a spouse from such entitlement if the parties no longer live together and were "embarked on a divorce action with good cause prior to [the spouse's] death[.]" Carr v. Carr, 120 N.J. 336, 345-46 (1990). Hence, a separation without a judgment of divorce or cause of action for divorce can disqualify a spouse from being entitled to an elective share. Ibid. However, there must be evidence, beyond mere separation, of a cause of action for divorce to disqualify a surviving spouse from elective share rights. Id. at 344 (citing McKay, supra, 205 N.J. Super. at 621; Estate of Hersh, supra, 195 N.J. Super. at 77-78). Mere separation is not enough. There must be evidence that the relationship was "sufficiently removed from the normally thought of state of matrimony as to make such an election inappropriate." Estate of Hersh, supra, 195 N.J. Super. at 77. We have described this situation "as a quasi-divorced state—a separation either by judicial decree or accompanied by circumstances which would have enabled the decedent to obtain a divorce." Ibid.

In Estate of Hersh, the couple separated by mutual consent, were separated for over thirty years, the surviving spouse had obtained a judgment of separation from bed and board in New York where the parties were married, and the deceased spouse had remarried. Id. at 76. We determined that the surviving spouse had no right to an elective share of the decedent's estate under N.J.S.A. 3B:8-1 because the evidence showed that the parties were vested with a cause of action for divorce. Id. at 79.

In Carr, the couple separated thirteen months prior to the wife having filed a complaint for divorce. 120 N.J. at 340. The wife was subsequently awarded pendente lite support, among other things. Ibid. The husband died before the divorce action concluded, and left his entire estate to his children. Ibid. The Court held that because the parties had separated and the wife had embarked on a divorce action with good cause prior to the husband's death, the wife was not entitled to an elective share of the husband's estate under N.J.S.A. 3B:8-1.

Here, although living separate and apart for approximately three years at the time of Mary's death, the couple's relationship was not sufficiently removed from the normally thought of state of matrimony that would preclude Arthur from claiming an elective share of Mary's estate. Estate of Hersh, supra, 195 N.J. Super. at 77. There was no evidence whatsoever

of marital problems or discord, or that the couple was estranged, no longer considered themselves husband and wife, had no intention of continuing their marriage, and considered their marriage "dead." See Altbrandt v. Altbrandt, 129 N.J. Super. 235, 237-38 (Ch. Div. 1974) (holding that the purpose of divorce on the ground of separation is to "terminate dead marriages" where the relationship "has so far deteriorated" that one party seeks a divorce).

Arthur and Mary were married for approximately fifty-nine years and there was nothing suggesting that Mary was seeking or even considering a divorce because she and Arthur were separated. Rather, the only reason for the couple's physical separation was the unfortunate circumstances of Arthur's Alzheimer's disease. We conclude that this is not the type of situation giving rise to a cause of action for divorce under N.J.S.A. 2A:34-2(d). There was nothing more than the couple's mere separation, which is not enough.

Nor is this the type of situation that would constitute grounds for divorce under N.J.S.A. 2A:34-2(f). See E. v. F., 118 N.J. Super. 491, 493-95 (Ch. Div. 1972) (examining mental illness, such as paranoid schizophrenia, as a ground for divorce). Although Arthur's medical condition rendered him unable to manage himself or his affairs, it did not render him

27

unable to elect against Mary's estate. More importantly, Mary never sought to divorce him because he had Alzheimer's disease or for any other reason. Thomas cites no authority to support his view that N.J.S.A. 2A:34-2(f) applies to a nursing home resident suffering from Alzheimer's disease or that this statute precluded Arthur from claiming his elective share. We have found nothing in the statutory language or legislative history of N.J.S.A. 3B:8-1, or in case law, that supports such a result. Accordingly, we conclude the trial judge correctly found that Arthur was not excepted from his elective share of Mary's augmented estate under N.J.S.A. 3B:8-1.

### B.

Thomas next argues that the Estate had no right to an elective share of Mary's augmented estate because that right was personal to Arthur and could only be exercised during his lifetime as per N.J.S.A. 3B:8-11. This argument lacks merit as well.

Contrary to Thomas's position, this is not a matter involving a creditor seeking to recover against a surviving spouse's elective share, see Aragon v. Estate of Snyder, 314 N.J. Super. 635, 640 (Ch. Div. 1998), nor is it a probate or estate matter. See In re Estate of Wilma Bilse, 329 N.J. Super. 158 (Ch. Div. 1999), aff'd o.b., 329 N.J. Super. 118 (App. Div.

2000).  This matter involves a Medicaid recipient and is governed by broad federal and state Medicaid estate recovery provisions.  Federal Medicaid law requires participating states to recover benefits paid for nursing facility services from a deceased Medicaid recipient's estate.  42 U.S.C.A. § 1396p(b)(1)(B).  State law empowers the Commissioner to file a lien and recover against an estate for Medicaid benefits paid to the deceased Medicaid recipient.  N.J.S.A. 30:4D-7.2(a)(2); N.J.A.C. 10:49-14.1(d).  An estate includes not only assets in an estate, as defined under state probate law, but also any other assets in which the Medicaid recipient had any legal title or interest at the time of his death.  N.J.S.A. 30:4D-7.2(a)(3); N.J.A.C. 10:49-14.1(a).

Arthur's elective share of Mary's augmented estate was an asset in which he had legal title or interest at the time of his death, and it was an asset that was available to him during his lifetime.  Accordingly, we conclude the trial judge correctly found that the elective share was part of Arthur's estate and subject to a Medicaid lien.

III.

A.

In the alternative, Thomas first argues that Arthur's elective share was zero because the proceeds from the sale of

the condominium were excluded from Mary's augmented estate under N.J.S.A. 3B:8-5, as they were transfers of property with Arthur's written consent (the deed) and joinder. We disagree.

The augmented estate under N.J.S.A. 3B:8-1

> means the estate reduced by funeral and administration expenses, and enforceable claims, to which is added the value of property transferred by the decedent at any time during the marriage . . . to or for the benefit of any person other than the surviving spouse . . . to the extent that the decedent did not receive adequate and full consideration[.]
>
> [N.J.S.A. 3B:8-3 (emphasis added).]

However, any transfer of property by the decedent pursuant to N.J.S.A. 3B:8-3 is excluded from the augmented estate "if made with the written consent or joinder of the surviving spouse[.]" N.J.S.A. 3B:8-5.

The decedent, Mary, did not transfer her one-half interest in the condominium to Arthur. She merely signed the deed transferring his one-half interest to herself, and she at all times maintained her ownership of the property. Arthur's transfer of his interest in the condominium "was not a transfer within the ambit of N.J.S.A. 3B:8-3 because that statute applies to transfers by the decedent, not the surviving spouse." Estate of DeMartino, supra, 373 N.J. Super. at 220, n.1. The same analysis applies to the stocks and bank accounts transferred to

30                                                                                A-1086-14T4

Mary with Arthur's consent. We reject Thomas's tortured interpretation of N.J.S.A. 3B:8-3 that a transfer by deed from Mary and Arthur jointly to Mary individually constitutes a transfer of property by the decedent with the written consent or joinder of the surviving spouse. Consequently, we conclude the trial judge correctly found that the proceeds from the sale of the condominium and the stocks and bank accounts were not excluded from Mary's augmented estate under N.J.S.A. 3B:8-3 and -5.

B.

Lastly, Thomas argues that the $6,726.87 New Jersey Group Life Insurance Policy, the $9,626.01 irrevocable pre-paid funeral trust, and the $2,073.07 New Jersey Death Benefit should be deducted from Arthur's elective share pursuant to N.J.S.A. 3B:8-18(a). Thomas does not challenge the judge's use of the elective share formula in N.J.S.A. 3B:8-1, -3, and -18. Rather, he argues the judge incorrectly found that these assets had no value to Arthur at the time of Mary's death. Again, we disagree.

N.J.S.A. 3B:8-18(a) applies to "[t]he value of all property, estate or interest therein, owned by the surviving spouse . . . in his own right at the time of the decedent's death from whatever source acquired, or succeeded to by the

surviving spouse . . . as a result of decedent's death[.]" (Emphasis added); see also In re Estate of Cole, 200 N.J. Super. 396, 403 (Ch. Div. 1984). Arthur did not own in his own right, have control over, or derive any benefit from the New Jersey Group Life Insurance Policy, pre-paid irrevocable funeral trust, or New Jersey Death Benefit at the time of Mary's death. Had these assets been available to Arthur when Mary died, which they were not, he would have exceeded the $4000 resource threshold, making him ineligible for Medicaid benefits and subject to reimbursement. N.J.A.C. 10:70-5.1; N.J.A.C. 10:71-4.5(c), -4.8(a), -5.3(a).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION