**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0832-17T4

E.C.,

     Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES and UNION COUNTY
BOARD OF SOCIAL SERVICES,

     Respondents-Respondents.

_____

Submitted February 7, 2019 – Decided March 25, 2019

Before Judges Whipple and DeAlmeida.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

SB2 Inc., attorneys for appellant (Laurie M. Higgins, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Division of Medical Assistance and Health Services (Melissa H. Raksa, Assistant Attorney

General, of counsel; Jacqueline R. D'Alessandro, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff E.C. appeals from the September 7, 2017 final decision of the Division of Medical Assistance and Health Services (DMAHS) adopting the initial decision of an Administrative Law Judge (ALJ) finding E.C. eligible for Medicaid benefits, but assessing a transfer penalty of $81,102.20. We affirm.

I.

The following facts are derived from the record. On September 10, 2015, E.C., then 103 years old and a resident of a nursing home, applied through a representative to the Union County Board of Social Services (the Board) for Medicaid benefits. On April 25, 2016, the Board found E.C. eligible for benefits as of August 1, 2015. However, the Board imposed a period of ineligibility of 334 days, from August 1, 2015 to June 29, 2016, due to E.C.'s transfer of $111,051.01 in assets to her niece, P.R., within the five-year look-back period.

E.C. requested a fair hearing with respect to the transfer penalty. The matter was transferred to the Office of Administrative Law, where a fair hearing was held before ALJ Joan Bedrin Murray. At the hearing, a representative of the Board testified that after the initial decision, the Board obtained proof that a portion of the $111,051.01 transferred to P.R. was used to pay E.C.'s rent. As a

2

result, the parties stipulated to a reduction in the penalty amount to $84,702.20, adjusting the period of ineligibility to April 29, 2016.

L.B. testified that she began providing caretaker services to E.C. in 2014 and was paid $150 a week in cash to assist her with housekeeping, meal preparation, bathing, and toileting. According to L.B., in May 2015, E.C. fractured her hip and was admitted to a nursing home. Although the nursing facility provided caregiver services to its residents, L.B. testified that she continued to provide care to E.C. after she was admitted to the facility, and until E.C.'s death in June 2016. L.B. testified that she also received additional funds, the amount of which she approximated, from P.R.'s spouse that she used for grocery shopping, podiatrist visits, and purchasing household items for E.C. L.B. testified that she collected receipts for these purchases and gave those receipts to P.R. No receipts were produced at the hearing.

After the hearing, P.R. submitted an affidavit stating that she maintained a separate bank account containing funds transferred to her by E.C. She stated that she spent $57,340.89 of E.C.'s funds on E.C.'s behalf. Included with the affidavit was a spreadsheet compiled by counsel that P.R. said represented the purchases she made on behalf of E.C. The post-trial submission did not include bank records for the account or receipts for any purchases.

On June 16, 2017, ALJ Murray issued an initial decision affirming the imposition of a transfer penalty, but reducing the amount to $81,102.20. The ALJ found credible L.B.'s testimony that she provided caregiver services to E.C. from December 2014 to May 2015, when E.C. was admitted to the nursing home, receiving $3600 for her work. The ALJ found a lack of credible evidence establishing that the other expenditures about which L.B. testified were made for fair market value, given the absence of receipts. ALJ Murray found that P.R.'s affidavit was not credible, because P.R. could not be cross-examined, and because her statements were not corroborated. Thus, she concluded E.C. had not overcome the presumption that expenditures beyond the $3600 were for the purpose of accelerating E.C.'s Medicaid eligibility. See N.J.A.C. 10:71-4.10(j).

On September 7, 2017, the Director, DMAHS issued a final agency decision adopting ALJ Murray's initial decision. The Director adopted the ALJ's credibility determinations, and agreed with her observation that the hearing record did not contain credible evidence sufficient to overcome the presumption that the disallowed transfers were made for early qualification for Medicaid. The Director rejected the evidentiary value of P.R.'s affidavit because it was vague and uncorroborated. Finally, the Director rejected E.C.'s argument that because she was in good health prior to the fall that resulted in her being

4

admitted to the nursing facility, it was an error to consider her transfer of assets as an effort to accelerate Medicaid eligibility. See N.J.A.C. 10:71-4.10(k) ("[t]he presence of one or more of the following factors, while not conclusive, may indicate that the assets were transferred exclusively for some purpose other than establishing Medicaid eligibility . . . [t]raumatic onset of disability"). The Director noted E.C.'s advanced age, her receipt of caretaking services since 2014[1], and her niece's longtime management of her financial affairs as evidence that E.C. was contemplating Medicaid eligibility during the look-back period.

This appeal followed. E.C. argues that DMAHS should have deducted from the transfer penalty an additional: (1) $12,510[2] for L.B.'s services after E.C. was admitted to the nursing home, and the expenditures made by L.B. on E.C.'s behalf with E.C.'s funds; and (2) $11,924.85 for expenditures by P.R. on behalf of E.C. with E.C.'s funds. In addition, E.C. argues that the ALJ should have considered the sudden onset of her institutionalization as evidence that the

---

[1]  The Director's final agency decision refers to 2013, which appears to be a typographical error, in light of L.B.'s testimony that she began providing services to E.C. in 2014. The error is not material to the outcome of this matter.

[2]  Although E.C.'s brief refers to $16,110 in this category, it appears that that figure includes the $3600 previously recognized by DMAHS. Therefore, E.C. actually seeks an additional $12,510 deduction.

A-0832-17T4

transfers she made during the look-back period were not to accelerate Medicaid eligibility.

## II.

"An administrative agency's decision will be upheld 'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." E.S. v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 349 (App. Div. 2010) (alteration in original) (quoting In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006)). "[I]f substantial credible evidence supports an agency's conclusion, a court may not substitute its own judgment for the agency's even though the court might have reached a different result." Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992).

"Medicaid is a federally-created, state-implemented program that provides 'medical assistance to the poor at the expense of the public.'" In re Estate of Brown, 448 N.J. Super. 252, 256 (App. Div. 2017) (quoting Estate of

A-0832-17T4

DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 217 (App. Div. 2004)); see also 42 U.S.C.A. § 1396-1. To receive federal funding the State must comply with all federal statutes and regulations. Harris v. McRae, 448 U.S. 297, 301 (1980).

Pursuant to the New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -19.5, DMAHS is responsible for administering the Medicaid program in our State. Through its regulations, DMAHS establishes "policy and procedures for the application process[.]" N.J.A.C. 10:71-2.2(b). "[T]o be financially eligible, the applicant must meet both income and resource standards." Brown, 448 N.J. Super. at 257; see also N.J.A.C. 10:71-3.15; N.J.A.C. 10:71-1.2(a).

Because Medicaid funds are limited, only those applicants with income and non-exempt resources below specified levels may qualify for government-paid assistance. To qualify for the Medicaid Only program, an individual applicant may not have resources that exceed $2000. N.J.A.C. 10:71-4.5(c). Resources are defined "as any real or personal property which is owned by the applicant . . . and which could be converted to cash to be used for his or her support and maintenance." N.J.A.C. 10:71-4.1(b).

A-0832-17T4

An applicant who transfers or disposes of resources for less than fair market value during a sixty-month look-back period before the individual becomes institutionalized or applies for Medicaid is penalized for making the transfer. 42 U.S.C.A. §1396p(c)(1)(E); N.J.A.C. 10:71-4.10(m)(1). Transfers within the look-back period are presumed to be made to obtain earlier Medicaid eligibility than that to which the applicant would otherwise be entitled. N.J.A.C. 10:71-4.10(i). The presumption may be rebutted with "convincing evidence that the assets were transferred exclusively (that is, solely) for some other purpose." N.J.A.C. 10:71-4.10(j). If the applicant does not overcome the presumption, a transfer penalty denies Medicaid benefits during the period the applicant should have been using the transferred resources for medical care. See W.T. v. Div. of Med. Assistance & Health Servs., 391 N.J. Super. 25, 37 (App. Div. 2007).

If the applicant transfers any resource within the look-back period, the transfer is reviewed, and the resource's fair market value is ascertained, as is the consideration received for the transferred resource. N.J.A.C. 10:71-4.10(c). The difference between the fair market value of the resource and the compensation received by the applicant is the "uncompensated value." N.J.A.C. 10:71-4.10(c)(2). If the uncompensated value of the transferred resources,

A-0832-17T4

combined with other countable resources, exceeds the resource limit for Medicaid eligibility, a transfer penalty is assessed. N.J.A.C. 10:71-4.10(m)(1).

Having carefully reviewed the record and applicable legal principles, we conclude the agency's decision is supported by substantial credible evidence in the record as a whole, R. 2:11-3(e)(1)(D), and that E.C.'s arguments to the contrary are without sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(1)(E). Accordingly, we affirm for the reasons set forth in DMAHS's final agency decision adopting ALJ Murray's initial decision.

We note only that E.C. argues that because ALJ Murray found L.B. to be credible with respect to the wages she earned while providing services to E.C. prior to her being admitted to a nursing facility, she must find all of L.B.'s testimony regarding her services and expenditures credible. E.C.'s argument overlooks two crucial facts. First, L.B. was specific with respect to the amount she received for her services, allowing ALJ Murray to determine that she received fair market value for her services. There was a lack of specificity, including an absence of receipts, with respect to the expenditures L.B. made on behalf of E.C., making a fair market value determination impossible. Second, it is apparent that ALJ Murray did not find credible L.B.'s testimony that she provided caretaker services to E.C. after she was admitted to a nursing facility.

Having listened to and observed L.B. at the hearing, ALJ Murray could accept or reject, in whole or in part, the credibility of L.B.'s testimony.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0832-17T4