**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0807-17T4

J.F.,

      Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND
HEALTH SERVICES, and
CAMDEN COUNTY BOARD
OF SOCIAL SERVICES,

      Respondents-Respondents.

_____

Submitted December 13, 2018 – Decided April 4, 2019

Before Judges Simonelli and DeAlmeida.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

SB2, Inc., attorneys for appellant (Laurie M. Higgins, of counsel; John P. Pendergast, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Division of Medical Assistance and Health Services (Melissa H. Raksa, Assistant Attorney

General, of counsel; Jacqueline R. D'Alessandro, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner J.F. appeals from an August 29, 2017 final decision of the Director, Division of Medical Assistance and Health Services (DMAHS), adopting the initial decision of an Administrative Law Judge (ALJ) finding him ineligible for Medicaid benefits because he failed to submit documents necessary to verify his eligibility. We affirm.

I.

On April 6, 2015, J.F., through his daughter and power of attorney, M.P., submitted an application for Medicaid benefits to the county welfare agency (CWA) for Camden County. The CWA requested J.F. submit five years of bank statements from his checking account, along with other information, to verify his eligibility for benefits. On April 8, 2015, the CWA informed J.F. that the application would be denied if the requested information was not provided by April 23, 2015.

On April 22, 2015, M.P. requested an extension of time to provide the requested documents. In her request, M.P. stated that the checking account was closed and its statements had been archived by the bank. According to M.P., she submitted a request to the bank to retrieve the archived records and was told

that the account statements would be produced "ASAP." On April 28, 2015, the CWA granted an extension to May 13, 2015.

On May 14, 2015, one day after the expiration of the extended deadline, M.P. submitted a January 8, 2015 bank receipt for the checking account showing a closed account with a final balance of $19.16. A handwritten note on the receipt stated: "This is checking acct. which has been closed. I did[ not] handle my dad's accounts until January 2010, therefore I do not have copies of statements for this account. Thank you." M.P. provided the other materials requested by the CWA by the May 13, 2015 deadline. She did not seek a further extension to produce the checking account records. On July 10, 2015, the CWA, citing N.J.A.C. 10:71-2.2(e)(2), denied J.F.'s application because he did not provide the requested information.

J.F. requested a fair hearing. The matter was transferred to the Office of Administrative Law, where a fair hearing was held before ALJ Mary Ann Bogan. Two issues were addressed at the hearing: (1) whether the CWA was required by federal and state law to assist J.F. in obtaining the financial information necessary to verify his application; and (2) whether verification was required, given the information M.P. provided showing that the checking account was closed in 2015 with a final balance of $19.16. At the hearing, the ALJ asked a

representative of DMAHS whether the agency should have assisted J.F. through use of the Asset Verification System (AVS), a computer system that facilitates access to financial information. The representative stated that AVS was instituted as a pilot program after J.F.'s application was processed.

On June 27, 2017, ALJ Bogan issued an initial decision recommending that the denial of benefits be affirmed. The ALJ examined the responsibilities assigned to the CWA and the applicant in N.J.A.C. 10:71-2.2 and determined that nothing in the regulation required the CWA to assume the applicant's obligation to submit the information necessary to complete his application and verify his eligibility for benefits. In addition, ALJ Bogan concluded that the information provided by M.P. was insufficient to establish eligibility for benefits because the agency is entitled to examine transfers of assets during a sixty-month look-back period. See N.J.A.C. 10:71-4.10(a).[1]

On August 29, 2017, the Director issued a final decision adopting the ALJ's recommendation. The Director agreed with ALJ Bogan's determination that J.F. failed to provide the information necessary to verify eligibility for benefits. In addition, the Director agreed that "there is nothing in the state or

---

[1] ALJ Bogan noted that J.F. subsequently obtained the checking account information and reapplied for benefits. The CWA approved J.F.'s reapplication with an effective eligibility date of November 1, 2015.

federal law that . . . excuses Petitioner from [his] obligation to obtain documents needed to verify [his] eligibility[.]"

This appeal followed. J.F. argues that the final determination should be reversed because: (1) the information submitted with respect to his checking account was sufficient for the CWA to verify his eligibility for benefits; and (2) the CWA violated both state and federal law by failing to assist him in completing his Medicaid application.

II.

"Judicial review of agency determinations is limited." Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). In reviewing the agency's decision, we consider:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;

> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and

(3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Ibid. (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

"A reviewing court 'must be mindful of, and deferential to, the agency's expertise and superior knowledge of a particular field.'" Id. at 158 (quoting Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009)). "A reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 483 (2007)). "Deference to an agency decision is particularly appropriate where interpretation of the [a]gency's own regulation is in issue." R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting I.L. v. N.J. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 389 N.J. Super. 354, 364 (App. Div. 2006)). "However, a reviewing court is 'in no way bound by [an] agency's interpretation of a statute or its determination of a strictly legal issue.'" Allstars Auto Grp., 234 N.J. at 158 (alteration in original) (quoting Dep't of Children & Families, Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 302 (2011)).

A-0807-17T4

"Medicaid is a federally-created, state-implemented program that provides 'medical assistance to the poor at the expense of the public.'" In re Estate of Brown, 448 N.J. Super. 252, 256 (App. Div. 2017) (quoting Estate of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 217 (App. Div. 2004)); see also 42 U.S.C. § 1396-1. To receive federal funding the State must comply with all federal statutes and regulations. Harris v. McRae, 448 U.S. 297, 301 (1980).

Pursuant to the New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -19.5, DMAHS is responsible for administering Medicaid in our State. N.J.S.A. 30:4D-4. Through its regulations, DMAHS establishes "policy and procedures for the application process[.]" N.J.A.C. 10:71-2.2(b). "[T]o be financially eligible, the applicant must meet both income and resource standards." Estate of Brown, 448 N.J. Super. at 257; see also N.J.A.C. 10:71-3.15; N.J.A.C. 10:71-1.2(a).

In New Jersey, the Medicaid applicant is "the primary source of information. However, it is the responsibility of the agency to make the determination of eligibility and to use secondary sources when necessary, with the applicant's knowledge and consent." N.J.A.C. 10:71-1.6(a)(2). The CWA must "[a]ssist the applicant[] in exploring their eligibility for assistance[,]" and

"[m]ake known to the applicant[] the appropriate resources and services both within the agency and the community, and, if necessary, assist in their use[.]" N.J.A.C. 10:71-2.2(c)(3) to (4). However, the applicant must: "1. [c]omplete, with assistance from the CWA if needed, any forms required by the CWA as a part of the application process; 2. [a]ssist the CWA in securing evidence that corroborates his or her statements; and 3. [r]eport promptly any change affecting his or her circumstances." N.J.A.C. 10:71-2.2.

> The CWA shall verify the equity value of resources through appropriate and credible sources. Additionally, the CWA shall evaluate the applicant's past circumstances and present living standards in order to ascertain the existence of resources that may not have been reported. If the applicant's resource statements are questionable, or there is reason to believe the identification of resources is incomplete, the CWA shall verify the applicant's resource statements through one or more third parties.
>
> [N.J.A.C. 10:71-4.1(d)(3).]

The applicant bears a duty to cooperate fully with the CWA in its verification efforts, providing authorization to the CWA to obtain information when appropriate. N.J.A.C. 10:71-4.1(d)(3)(i).

> If verification is required in accordance with the provisions of N.J.A.C. 10:71-4.1(d)[(3)], the CWA shall . . . . verify the existence or nonexistence of any cash, savings or checking accounts, time or demand deposits, stocks, bonds, notes receivable or any other

A-0807-17T4

financial instrument or interest. Verification shall be accomplished through contact with financial institutions, such as banks, credit unions, brokerage firms and savings and loan associations. Minimally, the CWA shall contact those financial institutions in close proximity to the residence of the applicant or the applicant's relatives and those institutions which currently provide or previously provided services to the applicant.

[N.J.A.C. 10:71-4.2(b)(3).]

The CWA may perform a "[c]ollateral investigation" wherein the agency contacts "individuals other than members of applicant's immediate household, made with the knowledge and consent of the applicant[.]" N.J.A.C. 10:71-2.10(a). "The primary purpose of collateral contacts is to verify, supplement or clarify essential information." N.J.A.C. 10:71-2.10(b). Neither N.J.A.C. 10:71-4.1(d)(3) nor N.J.A.C. 10:71-2.10 require a CWA to undertake an independent investigation of an applicant. The agency instead is charged with verifying information provided by an applicant. For example, while N.J.A.C. 10:71-4.2(b)(3) requires the CWA to contact an applicant's financial institutions to verify an account's existence, it does not require the agency to obtain records directly from a financial institution.

Having carefully reviewed the record and applicable legal principles, we conclude DMAHS's decision is not arbitrary, capricious, or unreasonable and

9

comports with controlling law. The CWA's role is to assist the applicant in completing an application and to verify financial information when necessary. The CWA twice extended the deadline for submission of J.F.'s bank statements. He did not submit those documents in a timely manner. The CWA acted reasonably in upholding the denial of benefits.

We also disagree with J.F.'s argument that the CWA violated federal law by not adequately assisting him in completing his application. DMAHS, as our State Medicaid "agency[,] must request and use information relevant to verifying an individual's eligibility for Medicaid in accordance with § 435.948 through § 435.956 of this subpart." Income and Eligibility Verification Requirements, 42 C.F.R. § 435.945(b) (2017). To fulfill this obligation DMAHS must request:

> (1) Information related to wages, net earnings from self-employment, unearned income and resources from the State Wage Information Collection Agency (SWICA), the Internal Revenue Service (IRS), the Social Security Administration (SSA), the agencies administering the State unemployment compensation laws, the State-administered supplementary payment programs under section 1616(a) of the Act, and any State program administered under a plan approved under Titles I, X, XIV, or XVI of the Act; and
>
> (2) Information related to eligibility or enrollment from the Supplemental Nutrition Assistance Program, the

> State program funded under part A of title IV of the Act, and other insurance affordability programs.
>
> [42 C.F.R. § 435.948(a)(1) to (2) (2013).]

In addition, DMAHS may request "information relating to financial eligibility from other agencies in the State and other States and Federal programs to the extent the agency determines such information is useful to verifying the financial eligibility of an individual[.]" 42 C.F.R. § 435.948(a)(2013). Bank records do not fall within the scope of 42 C.F.R. § 435.948(a)(1).

Additionally, while the CWA cannot mandate applicants submit financial information for eligibility verification when that information is available electronically under 42 C.F.R. § 435.952(c) (2016), New Jersey's AVS, a system for gathering financial information electronically, was not yet operational at the time J.F.'s application was considered.

Finally, we reject J.F.'s argument that his application was improperly denied because the CWA had sufficient information with respect to his account. J.F. relies on the bank receipt showing that the checking account was closed in 2015 with a final balance of $19.16. To determine eligibility, however, DMAHS must examine an applicant's transfer of resources during a sixty-month look-back period. N.J.A.C. 10:71-4.10(a). The fact that J.F.'s account had a small

11

amount of funds at the time it was closed in 2015 does not shed light on transfers from that account during the sixty-month look-back period.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0807-17T4