**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3559-17T4

M.H.,

     Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES and OCEAN COUNTY
BOARD OF SOCIAL SERVICES,

     Respondents-Respondents.

_____

Submitted October 24, 2019 – Decided November 13, 2019

Before Judges Suter and DeAlmeida.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

SB2 Inc., attorneys for appellant (Laurie M. Higgins, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent Division of Medical Assistance and Health Services (Melissa H. Raksa, Assistant Attorney

General, of counsel; Jacqueline R. D'Alessandro, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner M.H. appeals from a February 27, 2018 final decision of the Director, Division of Medical Assistance and Health Services (DMAHS), adopting the initial decision of an Administrative Law Judge (ALJ) finding him ineligible for Medicaid benefits because he failed to submit information necessary to verify his eligibility. We affirm.

I.

On March 8, 2016, M.H. submitted an application for Medicaid benefits to the county welfare agency (CWA) for Ocean County. The application listed M.H. as single and having no resources of any kind. Through an investigation, CWA discovered M.H. was married.

On April 4, 2016, CWA requested M.H. submit information and documents regarding his marital status, immigration status, residency, bank accounts, real property, life insurance policies, and other assets held in the past five years to verify his eligibility for benefits. See N.J.A.C. 10:71-4.10 (disallowing benefits for applicants who dispose of assets at less than fair market value during a sixty-month lookback period). The agency also requested M.H. provide information and documents regarding his spouse's income. See

N.J.A.C. 10:71-5.5(a) (including the income of an applicant's spouse in some circumstances to determine eligibility for benefits). Finally, CWA requested M.H. explain why his receipt of social security benefits had been suspended.

CWA informed M.H. his application would be denied if the requested information and documents were not provided by April 18, 2016. CWA subsequently extended the deadline to April 28, 2016.

On April 18, 2016, M.H.'s counsel submitted some, but not all, of the information and documents requested by CWA. No social security information was provided. However, M.H.'s counsel enclosed a copy of a letter to the Social Security Administration requesting an explanation of why M.H.'s benefits had been suspended. Counsel represented M.H. was married, but separated from his spouse five years earlier. He produced no evidence establishing the separation or its duration. Counsel asked CWA to request a spousal waiver from DMAHS, that is, to have M.H.'s eligibility for benefits determined without consideration of his spouse's assets. See 42 U.S.C. § 1396r-5(c)(3)(C). In addition, counsel requested CWA's assistance in obtaining an explanation for the suspension of M.H.'s social security benefits and asked the agency to obtain any outstanding information it believed necessary to complete M.H.'s application.

On April 28, 2016, CWA, citing N.J.A.C. 10:71-2.2, denied M.H.'s application because he did not provide the requested information and documents. M.H. requested a fair hearing.

The matter was transferred to the Office of Administrative Law, where a fair hearing was held before ALJ Kathleen M. Calemmo. The hearing addressed whether: (1) counsel's April 18, 2016 letter substantially complied with CWA's information request; (2) CWA fulfilled its obligations under federal and state law to assist M.H. in obtaining the financial information necessary to verify his application; and (3) M.H. was entitled to a spousal waiver. M.H. called no witnesses. A CWA representative testified M.H.'s application was denied because it was incomplete and provided insufficient information to determine if a spousal waiver was warranted.

On January 23, 2018, ALJ Calemmo issued an initial decision recommending the denial of benefits be affirmed. The ALJ examined the responsibilities assigned to CWA and the applicant in N.J.A.C. 10:71-2.2 with respect to the submission of information and determined the information provided by M.H. was insufficient to establish eligibility for benefits. The ALJ noted the only information provided about M.H.'s marital status was the hearsay statements of his counsel and concluded "[t]here is nothing in the record to

support [M.H.'s] claim of separation." In addition, the ALJ found the only document in the record regarding M.H.'s assets was a bank statement for a one-month period.[1]

The ALJ concluded M.H. did not establish an entitlement to a spousal waiver. As the ALJ explained, "[p]etitioner was not present at the hearing and there was no one at the hearing to offer any testimony on his behalf. It is not known what efforts, if any, were made by the petitioner to obtain information from his wife."

On February 27, 2018, the Director issued a final decision adopting the ALJ's recommendation. The Director agreed with ALJ Calemmo's determination M.H. failed to provide the information necessary to verify eligibility for benefits.

This appeal followed. M.H. raises the following arguments for our consideration:

> POINT I
>
> RESPONDENT HAS VIOLATED FEDERAL LAW
> BY FAILING TO ASSIST M.H. IN COMPLETING
> HIS MEDICAID APPLICATION.

---

[1] Prior to the hearing, CWA discovered a bank account in M.H.'s name not listed on his application for benefits. The only records obtained from the account were for a one-month period in 2013 and showed the address of M.H.'s wife.

POINT II

RESPONDENT HAS VIOLATED STATE LAW BY
FAILING TO ASSIST M.H. IN COMPLETING HIS
MEDICAID APPLICATION.

POINT III

RESPONDENT HAS VIOLATED FEDERAL AND
STATE LAW BY FAILING TO PROVIDE
ADDITIONAL TIME TO M.H. IN ORDER TO
ALLOW HIM SUFFICIENT TIME TO PROVIDE
REQUESTED VERIFICATIONS.

POINT IV

RESPONDENT HAS VIOLATED STATE LAW BY
FAILING TO PROVIDE WRITTEN NOTICE OF THE
DENIAL OF A SPOUSAL WAIVER TO M.H.

II.

"Judicial review of agency determinations is limited." Allstars Auto Grp.,
Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018). "An
administrative agency's final quasi-judicial decision will be sustained unless
there is a clear showing that it is arbitrary, capricious, or unreasonable, or that
it lacks fair support in the record." Ibid. (quoting Russo v. Bd. of Trs., Police
& Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). In reviewing the agency's
decision, we consider:

(1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;

(2) whether the record contains substantial evidence to support the findings on which the agency based its action; and

(3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Ibid. (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

"A reviewing court 'must be mindful of, and deferential to, the agency's expertise and superior knowledge of a particular field.'" Id. at 158 (quoting Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009)). "A reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 483 (2007)). "Deference to an agency decision is particularly appropriate where interpretation of the [a]gency's own regulation is in issue." R.S. v. N.J. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting I.L. v. N.J. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 389 N.J. Super. 354, 364 (App. Div. 2006)). "However, a reviewing

court is 'in no way bound by [an] agency's interpretation of a statute or its determination of a strictly legal issue.'" Allstars Auto Grp., 234 N.J. at 158 (alteration in original) (quoting Dep't of Children & Families, Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 302 (2011)).

"Medicaid is a federally-created, state-implemented program that provides 'medical assistance to the poor at the expense of the public.'" In re Estate of Brown, 448 N.J. Super. 252, 256 (App. Div. 2017) (quoting Estate of DeMartino v. N.J. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 217 (App. Div. 2004)); see also 42 U.S.C. § 1396-1. To receive federal funding the State must comply with all federal statutes and regulations. Harris v. McRae, 448 U.S. 297, 301 (1980).

Pursuant to the New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -19.5, DMAHS is responsible for administering Medicaid. N.J.S.A. 30:4D-5. Through its regulations, DMAHS establishes "policy and procedures for the application process . . . ." N.J.A.C. 10:71-2.2(b). "[T]o be financially eligible, the applicant must meet both income and resource standards." Estate of Brown, 448 N.J. Super. at 257; see also N.J.A.C. 10:71-3.15; N.J.A.C. 10:71-1.2(a).

The Medicaid applicant is "the primary source of information. However, it is the responsibility of the agency to make the determination of eligibility and to use secondary sources when necessary, with the applicant's knowledge and consent." N.J.A.C. 10:71-1.6(a)(2). The CWA must "[a]ssist the applicant[] in exploring their eligibility for assistance[,]" and "[m]ake known to the applicant[] the appropriate resources and services both within the agency and the community, and, if necessary, assist in their use . . . ." N.J.A.C. 10:71-2.2(c)(3) to (4). The applicant must: "1. [c]omplete, with assistance from the CWA if needed, any forms required by the CWA as a part of the application process; 2. [a]ssist the CWA in securing evidence that corroborates his or her statements; and 3. [r]eport promptly any change affecting his or her circumstances." N.J.A.C. 10:71-2.2 (e)(1) to (3).

> The CWA shall verify the equity value of resources through appropriate and credible sources. Additionally, the CWA shall evaluate the applicant's past circumstances and present living standards in order to ascertain the existence of resources that may not have been reported. If the applicant's resource statements are questionable, or there is reason to believe the identification of resources is incomplete, the CWA shall verify the applicant's resource statements through one or more third parties.
>
> [N.J.A.C. 10:71-4.1(d)(3).]

A-3559-17T4

The applicant bears a duty to cooperate fully with the CWA in its verification efforts, providing authorization to the CWA to obtain information when appropriate. N.J.A.C. 10:71-4.1(d)(3)(i).

> If verification is required in accordance with the provisions of N.J.A.C. 10:71-4.1(d)[(3)], the CWA shall . . . verify the existence or nonexistence of any cash, savings or checking accounts, time or demand deposits, stocks, bonds, notes receivable or any other financial instrument or interest. Verification shall be accomplished through contact with financial institutions, such as banks, credit unions, brokerage firms and savings and loan associations. Minimally, the CWA shall contact those financial institutions in close proximity to the residence of the applicant or the applicant's relatives and those institutions which currently provide or previously provided services to the applicant.
>
> [N.J.A.C. 10:71-4.2(b)(3).]

The CWA may perform a "[c]ollateral investigation" wherein the agency contacts "individuals other than members of applicant's immediate household, made with the knowledge and consent of the applicant . . . ." N.J.A.C. 10:71-2.10(a). "The primary purpose of collateral contacts is to verify, supplement or clarify essential information." N.J.A.C. 10:71-2.10(b). Neither N.J.A.C. 10:71-4.1(d)(3) nor N.J.A.C. 10:71-2.10 require a CWA to undertake an independent investigation of an applicant. The agency instead is charged with verifying information provided by an applicant. For example, while N.J.A.C. 10:71-

10

4.2(b)(3) requires the CWA to contact an applicant's financial institutions to verify an account's existence, it does not require the agency to obtain records directly from a financial institution.

Having carefully reviewed the record and applicable legal principles, we conclude DMAHS's decision is not arbitrary, capricious, or unreasonable and comports with controlling law. The CWA's role is to assist the applicant in completing an application and to verify financial information provided by the applicant when necessary. The CWA extended the deadline for submission of M.H.'s financial information, including information relating to his marital status and spouse's assets, in light of the false statement in M.H.'s application that he was single. M.H. did not submit the necessary information. He provided no information with respect to his spouse's assets. In addition, the only information provided about M.H.'s marital status were the hearsay statements of his counsel that M.H. had been separated from his spouse for five years. No documents, affidavits, or other evidence supporting counsel's representations were submitted. CWA could not verify necessary information relating to M.H.'s assets, marriage, and residence.

We disagree with M.H.'s argument that the CWA violated federal and State law by not adequately assisting him in completing his application.

11

DMAHS, as our State Medicaid "agency[,] must request and use information relevant to verifying an individual's eligibility for Medicaid in accordance with § 435.948 through § 435.956 of this subpart." Income and Eligibility Verification Requirements, 42 C.F.R. § 435.945(b) (2017). To fulfill this obligation DMAHS must request:

> (1) Information related to wages, net earnings from self-employment, unearned income and resources from the State Wage Information Collection Agency (SWICA), the Internal Revenue Service (IRS), the Social Security Administration (SSA), the agencies administering the State unemployment compensation laws, the State-administered supplementary payment programs under section 1616(a) of the Act, and any State program administered under a plan approved under Titles I, X, XIV, or XVI of the Act; and

> (2) Information related to eligibility or enrollment from the Supplemental Nutrition Assistance Program, the State program funded under part A of title IV of the Act, and other insurance affordability programs.

> [42 C.F.R. § 435.948(a)(1) to (2) (2013).]

In addition, DMAHS may request "information relating to financial eligibility from other agencies in the State and other States and Federal programs to the extent the agency determines such information is useful to verifying the financial eligibility of an individual[.]" 42 C.F.R. § 435.948(a) (2013). Bank records do not fall within the scope of 42 C.F.R. § 435.948(a)(1). M.H., in

essence, argues DMAHS has a legal obligation to investigate M.H.'s assets and marital status, verify the accuracy of the information it finds, and complete his application. The law does not put that onus on the agency.

Additionally, while the CWA cannot mandate applicants submit financial information for eligibility verification when that information is available electronically under 42 C.F.R. § 435.952(c) (2016), New Jersey's Asset Verification System, a computer system that facilitates access to financial information, was not yet operational at the time M.H.'s application was considered.

Finally, the parties acknowledge M.H. asked for, and was denied, a spousal waiver. Because M.H.'s application was denied based on his failure to submit any information relating to his own assets, we need not address whether M.H. was entitled to a spousal waiver.

To the extent we have not addressed other arguments raised by M.H., we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3559-17T4