**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4003-19

W.S.,

     Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES and GLOUCESTER
COUNTY BOARD OF SOCIAL
SERVICES,

     Respondents-Respondents.

_____

Argued October 25, 2021 – Decided December 2, 2021

Before Judges Mayer and Natali.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Jennifer Almquist argued the cause for appellant (Cowart Dizzia, LLP, attorneys; Jennifer Almquist, on the briefs).

Jacqueline R. D'Alessandro, Deputy Attorney General, argued the cause for respondent Division of Medical

Assistance and Health Services (Andrew J. Bruck, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Jacqueline R. D'Alessandro, on the brief).

John A. Alice argued the cause for respondent Gloucester County Board of Social Services.

PER CURIAM

Petitioner W.S., through his estate, appeals a May 17, 2020 final agency determination of the New Jersey Division of Medical Assistance and Health Services (Division), which adopted an Administrative Law Judge's (ALJ) decision denying W.S.'s request for Medicaid Only benefits.[1]  We affirm.

I.

After a severe heart attack left him brain damaged and in a vegetative state at age 67, W.S. was admitted to the Deptford Center for Rehabilitation and Healthcare (Deptford), where he resided until his death.  He applied for Medicaid coverage a total of three times.

---

[1] W.S. applied for Medicaid Only coverage under N.J.A.C. 10:71, a program for those in need who qualify only for medical benefits.  I.L. v. New Jersey Dep't of Hum. Servs., Div. of Med. Assistance & Health Servs., 389 N.J. Super. 354, 356 n.1 (App. Div. 2006).

W.S.'s wife, P.W., filed the first application on his behalf in November 2017.  The second was filed by W.S.'s Designated Authorized Representative (DAR), Cheryl Soistman, the Medicaid Coordinator at Deptford, in July 2018.

In both applications, W.S. checked off "yes" to indicate he was blind or disabled, but neither application provided a date indicating how long he had suffered from any disability.  The Gloucester County Board of Social Services (Board) granted W.S. a ten-day extension with respect to the second application after sending a needs list requesting additional documentation.  The Board denied both applications due to W.S.'s failure to provide the documentation necessary to process the application, including financial information in P.W.'s name only.

Because W.S. could not govern his affairs, P.W. commenced guardianship proceedings in December 2017.  She hired an attorney to assist her and requested Deptford provide required doctors' signatures to support the guardianship application.  It appears Deptford failed to take any further action, despite P.W.'s requests, until approximately seven months later, in August 2018, when it requested an extension with respect to the second Medicaid application "pending appointment of a guardian" for W.S.  P.W. was eventually appointed guardian

of her husband and his estate on October 17, 2018, and the court issued letters of guardianship on November 8, 2018.

After the Board denied his first two applications, W.S. filed a third Medicaid application on October 31, 2018, again through his DAR. This appeal relates only to that third application.

W.S.'s third application again checked the "blind or disabled" box, but he did not specify a date when he was determined to be disabled. As a result, the Board caseworker classified W.S.'s application as "aged" because he was over sixty-five years old, and a "blind" or "disabled" determination is made not by the County but by the State. Further, without an official determination from Social Security establishing a disability, the caseworker had insufficient information to determine that W.S. was disabled. The caseworker also did not receive a PA-5 or a PA-6 form, two documents which would have assisted in a disability classification determination.

On November 8, 2018, the Board sent Soistman a letter of need, identifying eleven missing documents required to process W.S.'s application. The list included bank account information, life insurance policy documentation, pension eligibility from W.S.'s former employer, and current DAR information. Because of the five-year look-back period for financial

documentation, much of the information requested was the same as that sought in the prior two applications. The caseworker afforded Soistman twenty days for an appropriate response and informed her that if the information was not received within the specified time period from the receipt of the request, W.S.'s application would be denied. The sending of the letter also commenced the forty-five-day processing period for "aged" applications.

P.W. testified before the ALJ that she was not provided with the needs list from Soistman or the Board. P.W. further stated that she only had authority to govern her husband's affairs from November 8, 2018 until his death on November 26, 2018, as her guardianship terminated when he died.

P.W. testified that after W.S.'s death, she had trouble obtaining the documents requested in the needs list, including access to bank records and pension information. Notice, however, was never provided to the Board caseworker regarding the obstacles P.W. purportedly encountered. Despite these difficulties, P.W. did have access to certain of her husband's accounts at the time of his initial hospitalization in 2017, as well as her own accounts.

On November 28, 2018, the twenty-day deadline to provide the information from the needs list passed without the Board receiving any submission from Soistman. The next day, counsel for Deptford requested

additional time to provide the requested information. The Board granted the request, but on December 14, 2018, counsel requested the application remain open pending the appointment of an estate administrator, so that P.W. could obtain the additional documentation. This was the first time the caseworker was notified of W.S.'s death.

The caseworker considered the December 14th request, and was instructed by his supervisor to "move forward with the case as a denial." The Board issued a denial letter on December 17, 2018, forty-seven days after the initial filing of the application, and thirty-nine days from the November 8, 2018 needs letter.

P.W. was appointed executrix of W.S.'s estate on December 24, 2018, almost one month after W.S. died. Deptford appealed the denial of Medicaid benefits and requested a fair hearing. After considering the documentary record and the testimony of both P.W. and the Board's caseworker, ALJ Tama J. Hughes issued an Initial Decision on March 5, 2020 confirming the denial.

ALJ Hughes concluded the Board properly processed W.S.'s application as aged, within the forty-five-day review period as neither W.S., P.W., nor his DAR provided information to support a disability determination. She also emphasized that the information sought "for the most part" was the same as had been requested in W.S.'s second application. Finally, she found W.S. failed to

establish exceptional circumstances sufficient to excuse his DAR's failure to timely provide the requested information.

The Division officially adopted ALJ Hughes' determination as its final agency decision on May 17, 2020. In its accompanying written decision, the Assistant Commissioner explained that the Board "had been asking for [necessary] financial information since at least July 2018" and P.W. "had access to some, if not all, of the accounts in question[] including her own." The Assistant Commissioner further concluded the forty-five-day processing period for the application was appropriate, as W.S. was over the age of sixty-five and had not established a disability or blindness.

Before us, W.S. raises five points, arguing that the Division acted arbitrarily and capriciously by denying his request for Medicaid Only benefits. First, W.S. maintains that the agency failed to afford him the extended timeline for disabled applicants and should have placed his application in pending status because his death was an exceptional circumstance. Second, W.S. argues that the Board improperly ascribed "unavailable" assets to him in determining his eligibility. Third, W.S. maintains that the denial frustrates the purpose of Medicaid, which is designed to help those most in need. Fourth, W.S. contends that the Board failed to assist him with his application. Finally, W.S. argues that

the spousal refusal standards precluded the Board from denying Medicaid benefits due to P.W.'s failure to provide documentation.

We reject these arguments and affirm. We conclude that the Division's decision was consistent with applicable law and based upon credible evidence in the record and, as such, the denial of Medicaid benefits was neither arbitrary, capricious, nor unreasonable. We also reject W.S.'s contention that his death constituted an exceptional circumstance as the Board had been seeking his financial information since at least July 2018. We further disagree that the Board failed to assist W.S. or his representatives, as he was provided at least two extensions with respect to his applications and consistently failed to provide the information requested. Finally, we are not persuaded by W.S.'s policy-based arguments.

## II.

On judicial review of an agency decision, "[o]ur function is to determine whether the administrative action was arbitrary, capricious or unreasonable." Burris v. Police Dep't, Twp. of W. Orange, 338 N.J. Super. 493, 496 (App. Div. 2001) (citing Henry v. Rahway State Prison, 81 N.J. 571, 580 (1980)). The agency decision must be supported by "'substantial evidence'" in the record as a whole. Circus Liquors, Inc. v. Middletown Twp., 199 N.J. 1, 10 (2009) (quoting

Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)). A presumption of validity attaches to the agency's decision. See Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997). The party challenging the validity of an agency's decision has the burden of showing that it was arbitrary, capricious, or unreasonable. J.B. v. N.J. State Parole Bd., 444 N.J. Super. 115, 149 (App. Div. 2016) (citing In re Arenas, 385 N.J. Super. 440, 443–44 (App. Div. 2006)).

Our review is therefore guided by three inquiries: "(l) whether the agency's decision conforms with relevant law; (2) whether the agency's decision is supported by substantial credible evidence in the record; and (3) whether, in applying the law to the facts, the administrative agency clearly erred in reaching its conclusion." Twp. Pharm. v. Div. of Med. Assistance & Health Servs., 432 N.J. Super. 273, 283–84 (App. Div. 2013) (citing In re Stallworth, 208 N.J. 182, 194 (2011)).

"Medicaid is a federally-created, state-implemented program that provides 'medical assistance to the poor at the expense of the public.'" Matter of Estate of Brown, 448 N.J. Super. 252, 256 (App. Div.) (quoting Estate of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 217 (App. Div. 2004)); see also 42 U.S.C. § 1396–1. To receive funding, a State must comply with all federal statutes and regulations, including eligibility requirements set

by the federal government.  Harris v. McRae, 448 U.S. 297, 301 (1980); Zahner v. Sec'y Pa. Dep't of Human Servs., 802 F.3d 497, 512 (3d Cir. 2015). Participating states "must provide coverage to the 'categorically needy,' which includes . . . persons whom Congress considered especially deserving of public assistance because of family circumstances, age, or disability." L.M. v. Div. of Med. Assistance & Health Servs., 140 N.J. 480, 485 (1995) (citing 42 U.S.C. § 1396a(a)(10)(A)(i)).

In New Jersey, the Medicaid program is administered by the Division pursuant to the New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D–1 to -19.5.  The Division and the Commissioner of the Department of Human Services are responsible for establishing policy and procedures for the application process and supervising the operation of and compliance with the policy and procedures so established.  N.J.A.C. 10:71-2.2(b).  In turn, County Welfare Agencies (CWA), such as the Board, evaluate eligibility pursuant to N.J.A.C. 10:71-2.2.  A CWA "exercises direct responsibility in the application process to:  1. Inform applicants about the purpose and eligibility requirements for Medicaid Only [. . .]; 2. Receive applications; 3. Assist applicants in exploring their eligibility for assistance; 4. Make known the appropriate resources and services, and, if necessary, assist in

their use; and 5. Assure the prompt and accurate [notification of eligibility or ineligibility.]" N.J.A.C. 10:71-2.2(c)(1)-(5).

A CWA is subject to certain procedural requirements in processing applications under New Jersey's Administrative Code. The CWA must timely process applications and the "maximum period of time normally essential to process an application for the aged is [forty-five] days," whereas an application for the disabled or blind is given ninety days. N.J.A.C. 10:71-2.3(a). Any needs list or "notification letter" informing the applicant of outstanding documentation is considered the beginning of the forty-five or ninety-day time limit. Div. of Med. Assistance & Health Servs., Medicaid Commc'n No. 10-09, Case Processing Time Limit Increase 1–2 (2010).

Only under certain "exceptional circumstances" can these processing deadlines be extended. N.J.A.C. 10:71-2.3(c). If, at the end of the processing period, "substantially reliable evidence of eligibility is still lacking . . . the application may be continued in pending status" where exceptional circumstances exist. Ibid.

Medicaid eligibility is determined based upon the total value of the applicant's resources. N.J.S.A. 30:4D-2; N.J.A.C. 10:71-4.5(a). To be financially eligible for Medicaid, "the applicant must meet both income and

resource standards." Matter of Est. of Brown, 448 N.J. Super. 252, 257 (App. Div. 2017); see also N.J.A.C. 10:71-3.15; N.J.A.C. 10:71-1.2(a). Resources are defined under the regulations as "any real or personal property which is owned by the applicant and which could be converted to cash." N.J.A.C. 10:71-4.1(b).

The CWA must then verify the equity value of resources through "credible sources," and may evaluate the applicant's "past circumstances and present living standards in order to ascertain the existence of resources that may not have been reported." N.J.A.C. 10:71-4.1(d)(3). Additionally, "[w]hen a savings or checking account is held by the eligible individual with other parties, all funds in [a savings or checking] account are resources to the individual, so long as he or she has unrestricted access to the funds . . . ." N.J.A.C. 10:71-4.1(d)(2). A determination regarding resource eligibility is made "as of the first moment of the first day of each month." N.J.A.C. 10:71-4.1(e). The CWA may deny eligibility for Medicaid if the applicant fails to timely provide verifying information or "verifications." N.J.A.C. 10:71-2.2(e); N.J.A.C. 10:71-3.1.

III.

W.S. first argues that the Board erred in failing to classify him as a "disabled" applicant under N.J.A.C. 10:71-3.12(a), thereby precluding him from

relying on a ninety-day period to provide the necessary information and for the Board to process his application. We disagree.

N.J.A.C. 10:71-3.12(a) defines disabled persons as those who are "unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Further, the physical impairment must be "demonstrable by medically acceptable clinic and laboratory diagnostic techniques. Statements of the applicant including his/her own description of his/her impairment (symptoms) are, alone, insufficient to establish the presence of a physical or mental impairment." N.J.A.C. 10:71-3.12(b).

The determination of disability eligibility for the Medicaid Only program is a "direct responsibility" of the Division's Medical Review Team (MRT), rather than the CWA caseworker. N.J.A.C. 10:71-3.11(a). "[P]resumptive eligibility" can be granted upon the MRT's approval. N.J.A.C. 10:71-3.11(b). However, if the applicant has already been classified as disabled for Social Security purposes, review by the MRT is unnecessary and the applicant is considered automatically eligible as a disabled applicant. N.J.A.C. 10:71-3.11(c).

We acknowledge that W.S. would have qualified as disabled under N.J.A.C. 10:71-3.12(a) had the Board been provided with relevant information. In a persistent vegetative state for over a year, W.S. was "unable to engage in any substantial gainful activity" and ultimately died from his condition. W.S., however, was not receiving Social Security disability and therefore could not benefit from the provision under N.J.A.C. 10:71-3.11(c) that allows applicants already receiving these benefits to bypass the MRT process. Neither did W.S. submit the necessary information with his Medicaid application to establish his disability. Instead, the DAR simply checked off "disabled" without providing an applicable date or the basis for that designation.

As such, we conclude that the Board's processing of the application as aged, rather than disabled, was not improper, as the Board was not presented with any credible information establishing W.S. suffered from a physical or mental impairment under N.J.A.C. 10:71-3.12(b). W.S. was therefore not entitled to the longer processing period afforded to disabled applicants. In any event, W.S.'s eligibility was not dependent on whether he was disabled because he was sixty-seven years old at the time of his application and therefore qualified as an aged applicant.

We also agree with the Board that the additional forty-five days would not have resulted in a compliant application, considering W.S.'s failure to provide much of the same information previously requested by the Board with respect to his two earlier applications. Further, but for Deptford's delay in providing P.W. the documentation necessary to complete her guardianship petition, her appointment as guardian could have been finalized months earlier, thereby giving her access to the necessary documentation. Finally, we note that neither P.W. nor the DAR ever supplied the Board with all the requested information in the needs list, including those records and information to which P.W. had access before W.S.'s illness.

IV.

W.S. similarly argues that the Board should have afforded extra time to provide necessary verifications, contending that his "profound disability and death, coupled with [his] spouse's difficulty accessing materials" qualify as exceptional circumstances under N.J.A.C. 10:71-2.3(c). W.S.'s estate further explains that his death terminated P.W.'s authority as guardian, and the Board should have permitted additional time to gather the information in the needs list.

N.J.A.C. 10:71-2.3(c) recognizes that:

> [t]here will be exceptional cases where the proper
> processing of an application cannot be completed

within the [forty-five/ninety]-day period. Where substantially reliable evidence of eligibility is still lacking at the end of the designated period, the application may be continued in pending status. In each such case, the CWA shall be prepared to demonstrate that the delay resulted from one of the following: 1. Circumstances wholly within the applicant's control; 2. A determination to afford the applicant, whose proof of eligibility has been inconclusive, a further opportunity to develop additional evidence of eligibility before final action on his or her application; 3. An administrative or other emergency that could not reasonably have been avoided; or 4. Circumstances wholly outside the control of both the applicant and CWA.

[N.J.A.C. 10:71-2.3(c)(1)-(4).]

We are satisfied that the Board's decision declining to find exceptional circumstances was neither arbitrary, capricious, nor unreasonable, particularly since the Board had already allowed W.S. several extensions. Indeed, as noted, P.W. and the DAR had two previous opportunities to provide the proper information and the Board had been requesting relevant financial information since at least July 2018.

Additionally, even though P.W.'s guardianship ended at W.S.'s death, see N.J.S.A. 3B:12-64(a)(2), at least five of the requested accounts were identical to the requests made by the Board related to W.S.'s prior application. Because certain of these requests related to W.S.'s accounts to which P.W. had access in 2017, the termination of her guardianship and the attendant inability for her to

16

access certain accounts misses the mark. Moreover, the DAR neglected to inform the Board of any difficulties she encountered in accessing the documents. See J.D. v. Div. of Med. Assistance & Health Serv., No. HMA 3564-14, 2014 WL 3708680, at *1–2 (June 26, 2014), adopted, Final Decision (July 29, 2014) (finding that a guardian's difficulty in obtaining requested documents due to a lack of cooperation from petitioner's family and financial institutions did not constitute extraordinary circumstances).

V.

Next, W.S. maintains that the Board's denial was improper because it "incorrectly counted legally unavailable resources against [him]." We find no merit to this contention.

N.J.A.C. 10.71-4.1(b) lists ten categories of excludable resources that may not be attributed to the applicant, including "the value of resources which are not accessible to an individual through no fault of his or her own." N.J.A.C. 10.71-4.1(b)(6). States participating in the federal Medicaid program must consider "'only such income and resources as are . . . available to the applicant.'" N.M. v. Div. of Med. Assistance & Health Servs., 405 N.J. Super. 353, 359 (App. Div. 2009) (quoting 42 U.S.C.A. 1396a(a)(17)(B)) (emphasis in original).

W.S. relies on I.L. v. N.J. Dep't. of Human Servs., in which we reversed the denial of Medicaid Only benefits for an applicant who suffered from dementia and Alzheimer's disease. 389 N.J. Super. 354, 356 (App. Div. 2006). There, the issue was whether certain life insurance policies constituted countable assets for purposes of determining Medicaid eligibility. Ibid. The CWA considered the insurance policies and concluded that I.L. was ineligible for the Medicaid Only program because her assets exceeded the allowable maximum. Id. at 359.

The ALJ reversed, finding that because I.L. was not capable of handling her financial affairs and no guardian had been appointed for her, the policies were "not accessible to her through no fault of her own." Id. at 360. After the Division failed to adopt the ALJ's decision, we reversed, holding that the value of the I.L.'s life insurance policies was "inaccessible" in determining her eligibility for Medicaid benefits and "therefore excludable." Id. at 365.

The facts before us are distinguishable from those in I.L. Here, the application was denied because requested financial information was repeatedly not supplied; the agency did not reach the issue regarding whether any resource was excludable. Instead, P.W. and the DAR did not supply the requisite

information, preventing the Board's caseworker from determining the ultimate question of financial eligibility.

To be sure, W.S. "through no fault of his own" did not have access to his financial information. However, W.S. had a DAR available to assist him with the second and third applications and an appointed guardian during the pendency of the third application. He therefore had the "right, authority, or power" over the resources in question. N.J.A.C. 10:71-4.1(c)(1). Had Deptford assisted P.W. with her guardianship proceedings when she initially provided them with the paperwork in 2017, it could have worked with her to obtain the information on the needs list, some of which included accounts in P.W.'s name, while W.S. was still alive. We therefore conclude that the Board did not "incorrectly count" unavailable resources, particularly since it did not reach any financial eligibility evaluation of W.S.'s application as it was missing the required documentation.

VI.

W.S. also argues that the Board failed to assist him, contending that it is incumbent upon the Board to help totally disabled Medicaid Only applicants throughout the application process.

N.J.A.C. 10:71-1.6(a)(2) makes clear "[t]he applicants or beneficiaries are the primary source of information." Under N.J.A.C. 10:71-2.2(e), the applicant

19

must: "1. [c]omplete, with assistance from the CWA if needed, any forms required by the CWA as a part of the application process; 2. Assist the CWA in securing evidence that corroborates his or her statements; and 3. Report promptly any change affecting his or her circumstances." Thus, the applicant, after filing the initial application, must take active steps to ensure the Board has the documentation it requires to process the application.

On the other hand, it is the "responsibility of the agency to make the determination of eligibility and to use secondary sources when necessary, with the applicant's knowledge and consent." N.J.A.C. 10:71-1.6(a)(2). Additionally, under federal regulations, the State agency must "request . . . information relating to financial eligibility from other agencies in the State and other States and Federal programs to the extent the agency determines such information is useful to verifying the financial eligibility of an individual." 42 C.F.R § 435.948. Once an applicant meets the income and resource requirements for Medicaid Only, it is the CWA's responsibility to "furnish the [MRT] with current, pertinent social and medical information." N.J.A.C. 10:71-3.13(a).

The regulations clearly establish that an applicant must first provide sufficient information and verifications to a CWA in a timely manner to allow

it to determine eligibility, and corroborate the information submitted in support of the application. Here, the Board worked with W.S.'s representative for over one year and granted two extensions to obtain the necessary documents. However, neither P.W. nor W.S.'s DAR provided the requested verifications, thereby failing to satisfy the requirements imposed on applicants by N.J.A.C. 10:71-2.2(e) and N.J.A.C. 10:71-3.1(b).

Further, W.S.'s DAR never specifically indicated (other than checking the disabled box) that W.S. should be treated as a disabled applicant, and the Board was not obligated to independently verify W.S.'s disability. See, e.g., 42 C.F.R. § 435.956 (specifying certain non-financial information that the state Medicaid agency must verify). The Board caseworker testified before ALJ Hughes that he did not know for almost three weeks that W.S. had died, nor that P.W. and the DAR were having trouble accessing financial information. He testified that he "had not received anything to make [him] believe that the spouse couldn't provide the information." We therefore conclude that the Board and the Division's denial of W.S.'s application was neither arbitrary nor capricious, as it was grounded in the applicable regulations and the evidence in the record.

W.S. next argues that the Division's denial "imposes an artificial and prejudicial deadline prohibiting the neediest and most incapacitated applicants from obtaining benefits."  By denying Deptford a payor source for a patient with disabilities, W.S. further contends the Board's determination was contrary to public policy.  We find no merit to these arguments.

The New Jersey Medical Assistance and Health Services Act (Act), N.J.S.A. 30:4D-1 to -19.5, "provide[s] medical assistance, insofar as practicable, on behalf of persons whose resources are determined to be inadequate." N.J.S.A. 30:4D-2.  Additionally, under N.J.A.C. 10:49-2:17, "[i]f a person . . . is unable to pay for services provided, and appears to meet the requirements for eligibility for the New Jersey Medicaid or NJ FamilyCare program, the provider shall encourage the person, or his or her representative, to apply for benefits [t]o the CWA for programs, such as [among others] Medicaid Only."  N.J.A.C. 10:49-2:17(a)(1).

As it relates to long-term care, the Legislature has specifically indicated that "older adults and those with physical disabilities or Alzheimer's disease and related disorders that require a nursing facility level of care should not be forced to choose between going into a nursing home or giving up the medical assistance

22

that pays for their needed services." N.J.S.A. 30:4D-17.24(h). Further, "their eligibility for home and community-based long-term care services under Medicaid should be based upon the same income and asset standards as those used to determine eligibility for long-term care in an institutional setting." Ibid.

Additionally, with respect to disabled applicants, the Legislature has emphasized "[a]ny aged, blind or disabled person who believes he/she is eligible shall be assured an opportunity to make application (including reapplication) for Medicaid Only by completing the appropriate application form." N.J.A.C. 10:71-1.6(a)(1). Further, because "an individual who wishes to apply may be confined at home or at an institution, or may be subject to a critical illness or injury which impedes action on his or her own behalf . . . the CWA shall accept" an application from an authorized agent, including a relative or a "staff member of an institution or facility in which a person is receiving care, who has been designated by the institutional facility to so act." N.J.A.C. 10:71-2.5(c)(1)-(4).

We acknowledge that W.S. was among the class of persons covered by the Act and the aforementioned regulations. However, in order to ensure proper compliance with the Medicaid regulations and federal guidelines, there must "be strict adherence to law and complete conformity with administrative policies"

for Medicaid Only applications, including obligations to provide information when requested. N.J.A.C. 10:71-1.6(a)(4).

Neither the Board nor the Division denied W.S.'s application based on whether or not he was disabled. Nor did they fail to allow for the accommodations provided under N.J.A.C. 10:71-2.5(c) for individuals confined to institutions, as W.S. argues. Rather, the agency thrice accepted W.S.'s application from his wife and DAR, and allowed extensions on both the second and third applications. Simply put, P.W. and W.S.'s DAR failed to provide all the necessary information required to make an informed decision as required by the applicable federal and state statutes and regulations. Thus, any argument that the Division's denial frustrates the purpose of the Medicaid system to aid those most in need is misplaced as unsupported by the facts in the record.

## VIII.

Finally, W.S. argues that the spousal non-cooperation or undue hardship doctrines should have been invoked given P.W.'s non-compliance in the application process. Specifically, W.S. contends P.W.'s "fragile and overwhelmed" state constituted "undue hardship" under the applicable statute. Again, we find no support for this argument in the record.

W.S. argues that 42 U.S.C. § 1396r-5 prohibits the denial of Medicaid to individuals whose spouses fail to cooperate with the State. That statute provides that: "[t]he institutionalized spouse shall not be ineligible by reason of resources determined under paragraph (2) to be available for the cost of care where . . . the State determines that denial of eligibility would work an undue hardship." 42 U.S.C.A. § 1396r-5(c)(3)(C). W.S. contends that the Board was therefore precluded from denying W.S. Medicaid Only because of the undue hardships P.W. faced after his death.

We are not convinced that the Division's decision to deny W.S. Medicaid Only coverage was arbitrary and capricious under the standard and we agree with the ALJ that P.W., on her own accord, worked to assist Deptford and the DAR on several occasions. As the ALJ concluded, P.W. "provided whatever documentation was requested of her by the DAR," but the DAR failed to inform the Board's caseworker of any difficulties encountered in the process. P.W. also testified that she "tried to get all the [guardianship] paperwork" together, even hiring an attorney to help her. She further testified that she "kept trying to contact [Deptford] to find out when the doctors [could sign] the papers" so that she could properly process the guardianship paperwork. Thus, it is not accurate

to conclude that W.S.'s application was denied entirely because of P.W.'s lack of cooperation.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4003-19